MARYLAND CASUALTY COMPANY *v.*
UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 73. Argued November 13, 1919.—Decided January 12, 1920.

Under the Income Tax Act of 1913, § G, (a), (b), as under the Corporation Excise Tax Act of 1909, the income taxable to a domestic corporation is limited to income "received" during the year. P. 345.
Under these statutes premiums collected in any year by the agents of an insurance company but not paid over to the treasurer of the company, are part of its income "received" in that year. *Id.*

Where the Government imposed and collected the tax on all premiums written during the year, the company, claiming refund of part as erroneously assessed on premiums not received, must show what premiums were received during the year. P. 347.

Reserves which are required by state insurance departments in the exercise of statutory authority, are "required by law" within the meaning of the Excise and Income Tax Acts, *supra,* where they provide that net additions, required by law to be made within the year to reserve funds, may be deducted from gross, in determining net income. P. 348.

The term "reserve funds," as used in these acts, *held* to include an "unearned premium reserve," to meet future liabilities on policies; a "liability reserve," to satisfy claims indefinite in amount and as to time of payment, but accrued, on liability and workmen's compensation policies; and a "reserve for loss claims," accrued on other policies; but not to include funds required by state authority to be maintained to meet ordinary running expenses, such as taxes, salaries, re-insurance and unpaid brokerage. P. 349.

If an insurance company in one year makes an over-estimate of reserve requirements and so an excessive deduction from gross income, *semble,* that such excess may be treated, under these tax acts, as income of the year in which it is subsequently released to the general uses of the company. P. 351.

But amounts once deducted from gross income and added to reserves, under these acts, can be treated by the Government as income of a subsequent year for the purpose of computing the tax, only where it can be clearly shown that subsequent business conditions have released them to the free beneficial use of the company in a real, and not in a mere bookkeeping, sense. P. 352

A claim for refund of money paid with original returns made under the above-mentioned tax-acts, is barred if not presented to the Commissioner, as directed by Rev. Stats., § 3226, and sued on in the Court of Claims within the two-year limitation of § 3227; and these requirements are not postponed or superseded as to such payments by the facts that the original returns were amended and the assessments increased and the original payments credited upon the increased assessments, by the action of the Commissioner. *Cheatham* v. *United States,* 92 U. S. 85, distinguished Act of September 8, 1916, c. 463, § 14, 39 Stat. 772, *held* inapplicable. P. 352

52 Ct. Clms. 201, 288; 53 *id.* 81, modified and affirmed.

THE case is stated in the opinion.

*Mr. Burt E. Barlow,* with whom *Mr. Abram R. Serven* was on the brief, for appellant.

*Mr. Assistant Attorney General Frierson* for the United States.

MR. JUSTICE CLARKE delivered the opinion of the court.

Under warrant of the Act of Congress, approved August 5, 1909, c. 6, 36 Stat. 11, 113, the Government collected from the claimant, a corporation organized as an insurance company under the laws of Maryland, an excise tax for the years 1909, 1910, 1911 and 1912, and, under warrant of the Act of Congress of October 3, 1913, c. 16, 38 Stat. 114, 166, it likewise collected an excise tax for the first two months of 1913, and an income tax for the remaining months of that year.

This suit, instituted in the Court of Claims, to recover portions of such payments claimed to have been unlawfully collected, is here for review upon appeal from the judgment of that court.

The claimant was engaged in casualty, liability, fidelity, guaranty and surety insurance, but the larger part of its business was employers' liability, accident, and, in the later of the years under consideration in this case, workmen's compensation insurance.

By process of elimination the essential questions of difference between the parties ultimately became three, viz:

(1) Should claimant be charged, as a part of its gross income each year, with premiums collected by agents, but not transmitted by them to its treasurer within the year?

(2) May the amount of gross income of the claimant be reduced by the aggregate amount of the taxes, salaries, brokerage and re-insurance unpaid at the end of each year, under the provisions in both the excise and income

tax laws allowing deductions of "net addition, if any, required by law to be made within the year to reserve funds"?

(3) Should the decrease in the amount of reserve funds required by law for the year 1913 from the amount required for 1912 be treated as "released reserve" and charged to the company as income for 1913?

Of these in the order stated.

*First:* Section 38 of the Excise Tax Act (36 Stat. 112) provides that every corporation, organized under the laws of any State as an insurance company "shall be subject to pay annually a special excise tax with respect to the carrying on or doing business . . . equivalent to one per centum upon the entire net income . . . *received by it* from all sources during such year."

The Income Tax Act (38 Stat. 172) provides [§ G, paragraph (a)] that the tax shall be levied upon the entire "net income *arising or accruing* from all sources during the preceding calendar year." But in paragraph (b), providing for deductions, gross income is described as that "*received* within the year from all sources." So that, with respect to domestic corporations, it is clear enough that no change was intended by the use of the expression "arising or accruing" in the Income Tax Act, and that the tax should be levied under both acts upon the income "received" during the year. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 335.

The claimant did business in many States, through many agents, with whom it had uniform written contracts which allowed them to extend the time for payment of the premiums on policies, not to exceed thirty days from the date of policy, and required that on the fifth day of each calendar month they should pay or remit, in cash or its equivalent, the balance due claimant as shown by the last preceding monthly statement it rendered to it.

Under the provisions of such contracts obviously the agents were not required to remit premiums on policies written in November until the fifth of January of the next year and on policies written in December not until the following February.

Much the largest item of the gross income of the company was premiums collected on policies of various kinds. Omitting reference to earlier and tentative returns by the claimant and amendments by the Government, it came about that claimant took the final position that the only premiums with which it could properly be charged as net income "received by it . . . during each year" were such as were collected and actually paid to its treasurer within the year. This involved omitting from gross income each year "premiums in course of collection by agents, not reported on December 31st," which varied in amount from $584,000 in one year to $1,020,000 in another. The amount, if deducted one year, might appear in the return of the claimant for the next year, but the rate might be different.

The Government, on the other hand, contended that the claimant should return the full amount of premiums on policies written in each year, whether actually collected or not.

The Court of Claims refused to accept the construction of either of the parties and held that the claimant should have returned, not all premiums written by it, but all which were actually received by it during the year and that receipt by its agents was receipt by the company, within the meaning of the act of Congress.

The claimant contends that premiums paid to its agents but not remitted to its treasurer were not "received by it during the year," chiefly for the reason that while in possession of the agents the money could not be attached as the company's property (*Maxwell* v. *McGee*, 66 Massachusetts, 137), and because money, while thus in

the possession of agents was not subject to beneficial use by the claimant and therefore cannot, with propriety, be said to have been received by it, within the meaning of the act.

On the other hand it is conclusively argued: That payment of the premium to the agent discharged the obligation of the insured and called into effect the obligation of the insurer as fully as payment to the treasurer of the claimant could have done; that in the popular or generally accepted meaning of the words "received by it" (which must be given to them, *Maillard* v. *Lawrence*, 16 How. 251), receipt by an agent is regarded as receipt by his principal; that under their contract collected premiums in possession of the agents of the claimant were subject to use by it in an important respect before they were transmitted to the treasurer of the company, for the agency contract provided that "the agent will pay on demand, out of any funds collected by him for account of premiums and not remitted to the company, such drafts as may be drawn upon him by the company . . . for the purpose of settling claims, deducting same from his next succeeding monthly remittance;" and that only imperative language in the statute would justify a construction which would place it in the power of the claimant, by private contract with its agents, to shift payment of taxes from one taxing year into another.

The claimant withheld from its returns collections in the custody of its agents at the end of each year, and because in its amendments the Government had included all premiums written in each year whether or not collected, the Court of Claims, having reached the conclusion thus approved by us, allowed the claimant ninety days in which to show the amount of premiums received by it and its agents within each of the years in controversy, but the claimant failed to make such a showing, and thereupon the court treated the return of premiums

written as the correct one and very properly, so far as this item is concerned, dismissed claimant's petition.

*Second:* In the same words the Excise and Income Tax Acts provide that "the net addition, if any, required by law to be made within the year to reserve funds" may be deducted from gross, in determining the amount of net income to be taxed.

Finding its authority in this provision of the law the claimant in all of its returns treated as "reserves," for the purpose of determining whether the aggregate amount of them each year was greater or less than in the preceding year, and of thereby arriving at the "net addition to reserve funds" which it was authorized to deduct from the gross income, the following, among others, viz: "Reserve for unearned premiums," "Special reserve for unpaid liability losses," and "Loss claims reserve." Unearned premium reserve and special reserve for unpaid liability losses are familiar types of insurance reserves, and the Government, in its amended returns, allowed these two items, but rejected the third, "Loss claims reserve."

The Court of Claims, somewhat obscurely, held that the third item should also be allowed. This "Loss claims reserve" was intended to provide for the liquidation of claims for unsettled losses (other than those provided for by the reserve for liability losses) which had accrued at the end of the tax year for which the return was made and the reserve computed. The finding that the Insurance Department of Pennsylvania, pursuant to statute, has at all times since and including 1909 required claimant to keep on hand, as a condition of doing business in that State, "assets as reserves sufficient to cover outstanding losses," justifies the deduction of this reserve as one required by law to be maintained, and the holding that it should have been allowed for all of the years involved is approved.

But the Court of Claims approved the action of the Government in rejecting other claimed deductions of reserves for "unpaid taxes, salaries, brokerage and reinsurance due other companies.". The court gave as its reason for this conclusion that the "net addition if any, required by law to be made within the year to reserve -funds" which the act of Congress permitted to be deducted from gross income was limited to reserves required by express statutory provision and did not apply to reserves required by the rules and regulations of State Insurance Departments, when promulgated in the exercise of an appropriate power conferred by statute.

In this the Court of Claims fell into error. It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision. *United States* v. *Grimaud,* 220 U. S. 506; *United States* v. *Birdsall,* 233 U. S. 223, 231; *United States* v. *Smull,* 236 U. S. 405, 409, 411; *United States* v. *Morehead,* 243 U. S. 607. The law is not different with respect to the rules and regulations of a department of a state government.

But it is contended by the claimant that it was required to provide "reserves" for the payment of the rejected items of liability: because the Court of Claims found that pursuant to statutes the Insurance Department of Pennsylvania required the company, as a condition of doing business in that State, to keep on hand "assets as reserves" sufficient to cover all claims against the company "whether due or accrued"; because the department of New York required it to maintain "reserves sufficient to meet all of its accrued but unpaid indebtedness in each year"; and because the department of Wisconsin required it to carry "s f-ficient reserves to cover all of its outstanding liabilities "

Whether this contention of the claimant can be justified or not depends upon the meaning which is to be given to the words "reserve funds" in the two acts of Congress we are considering.

The term "reserve" or "reserves" has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which with accretions from interest, is set aside, "reserved," as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.

In this case, as we have seen, the term includes "unearned premium reserve" to meet future liabilities on policies, "liability reserve" to satisfy claims, indefinite in amount and as to time of payment, but accrued on liability and workmen's compensation policies, and "reserve for loss claims" accrued on policies other than those provided for in the "liability reserve," but it has nowhere been held that "reserve," in this technical sense, must be maintained to provide for the ordinary running expenses of a business, definite in amount and which must be currently paid by every company from its income if its business is to continue, such as taxes, salaries, reinsurance and unpaid brokerage.

The requirements relied upon, of the Insurance Departments of New York, Pennsylvania and Wisconsin that "assets as reserves" must be maintained to cover "all claims," "all indebtedness," "all outstanding liabilities," in terms might include the rejected items we are considering, but plainly the departments, in these expressions used the word "reserves" in a non-technical sense as equivalent to "assets," as is illustrated by the Massachusetts requirement that each company shall "hold or reserve assets" for the payment of all claims and obliga-

tions. The distinction between the "reserves" and general assets of a company is obvious and familiar and runs through the statements of claimant and every other insurance company. That provision for the payment of ordinary expenses such as we are considering was not intended to be provided for and included in "reserve funds" as the term is used in the acts of Congress is plain from the fact that the acts permit deductions for such charges from income if paid within the year, and the claimant was permitted in this case to deduct large sums for such ordinary expenses of the business—specifically, large sums for taxes. The claimant did not regard any such charges as properly covered by "reserves" and did not so include them in its statement for 1909. In its 1910 return "unpaid taxes" and "salaries" first appear as "reserves," and in 1911 "brokerage" and "re-insurance" are added. This earlier, though it is now claimed to have been an uninstructed or inexpert, interpretation of the language of the acts, was nevertheless the candid and correct interpretation of it, and the judgment of the Court of Claims in this respect is approved.

*Third:* The year 1913 was the only one of those under consideration in which the aggregate amount of reserves which the claimant was required by law to keep fell below the amount so required for the preceding year. The Government allowed only "unearned premium" and "unpaid liability loss," reserves to be considered in determining deductions. In 1913 the "unpaid liability loss reserve" decrease, exceeded the "unearned premium reserve" increase, by over $270,000, and this amount the Government added to the gross income of the claimant for the year, calling it "released reserve," on the theory that the difference in the amount of the reserves for the two years released the decrease to the claimant so that it could use it for its general purposes, and therefore constituted free income for the year 1913, in which the decrease occurred.

This theory of the Government was accepted by the Court of Claims and the addition to the gross income was approved.

The statute does not in terms dispose of the question thus presented.

Reserves, as we have seen, are funds set apart as a liability in the accounts of a company to provide for the payment or reinsurance of specific, contingent liabilities. They are held not only as security for the payment of claims but also as funds from which payments are to be made. The amount "reserved" in any given year may be greater than is necessary for the required purposes, or it may be less than is necessary, but the fact that it is less in one year than in the preceding year does not necessarily show either that too much or too little was reserved for the former year,—it simply shows that the aggregate reserve requirement for the second year is less than for the first, and this may be due to various causes. If, in this case, it were due to an over-estimate of reserves for 1912 with a resulting excessive deduction for that year from gross income and if such excess was released to the general uses of the company and increased its free assets in 1913, to that extent it should very properly be treated as income in the year in which it became so available, for the reason that in that year, for the first time, it became free income, under the system for determining net income provided by the statute, and the fact that it came into the possession of the company in an earlier year in which it could be used only in a special manner, which permitted it to become non-taxable would not prevent its being considered as received in 1913 for the purposes of taxation, within the meaning of the act.

The findings of fact in this case, however, do not show that the diminution in the amount of required reserves was due to excessive reserves in prior years or to any other cause by which the free assets of the company were in-

creased in the year 1913, and the following finding of fact makes strongly against such a conclusion.:

"The decrease in employers' liability loss reserve for 1913, designated as 'released reserve' did not in any respect affect or change claimant's gross income or disbursements, as shown by the State Insurance Reports."

It would not be difficult to suggest conditions under which the statutory permit to deduct net additions to reserve funds would result in double deduction in favor of an insurance company, but such deductions can be restored to income again only where it is clearly shown that subsequent business conditions have released the amount of them to the free beneficial use of the company in a real, and not in a mere bookkeeping sense. If this seemingly favorable treatment of insurance companies is to be otherwise corrected or changed, it is for Congress, and not for the courts, to amend the law.

Since the findings of fact before us do not make the clear showing, which must be required, that the statutory deduction of net reserves in prior years was restored to the free use of the claimant in 1913, it should not have been charged as income with the decrease in that year, and, on the record before us, the holding of the Court of Claims must be reversed.

There remains the question as to the statute of limitations.

The Government concedes that the case is in time with respect to the amended returns but claims that it is barred by Rev. Stats., §§ 3226, 3227 and 3228, with respect to taxes paid on the original returns for all of the years but 1913. The claimant made its original returns without protest except for the year 1909 and, without appeal to the Commissioner of Internal Revenue, voluntarily paid the taxes computed on them for each of the years. Payment was made for 1909 in June, 1910; for 1910 in June, 1911; for 1911 in June, 1912; for 1912 in June, 1913. No

claim for a refund of any of these payments was made until April 30, 1915, and then the claim was in general terms,

"For . . . amounts paid by it as taxes which, through lack of information as to the requirements of the law or by error in computation, it may have paid in excess of the amounts legally due."

This claim was rejected subsequent to the institution of this suit, which was commenced on February 8, 1916.

This statement shows the right of the claimant plainly barred by its failure to appeal to the Commissioner of Internal Revenue, Rev. Stats., § 3226 [this is fundamental, *King's County Savings Institution* v. *Blair*, 116 U. S. 200], and also by its failure to institute suit within two years after the cause of action accrued, Rev. Stats., § 3227.

The claimant contends that the amended returns filed by the Commissioner of Internal Revenue were not amendments or modifications of the original returns, but were based upon a different principle and, within the scope of *Cheatham* v. *United States*, 92 U. S. 85, constituted new assessments from which appeals were taken in time.

But they are denominated "amended returns" and while in dealing with the same items the basis of computation was in some cases varied, in each case the purpose and effect of them was to increase the payment which the claimant was required to make under the law and the payments made on the original returns were credited on the amounts computed as due on the returns as amended.

The inapplicability of *Cheatham* v. *United States*, 92 U. S. 85, is obvious, and the contention that the filing of the amended returns constituted the beginning of new proceedings which so superseded the original returns as to release the claimant from its entire failure to observe the statutory requirement for review of the latter is so un-

founded that we cannot consent to enter upon a detailed discussion of it.. This conclusion renders § 14 of the Act of Congress of September 8, 1916, c. 463, 39 Stat. 772, inapplicable.

It results that the judgment of the Court of Claims is modified, and as so modified affirmed, and the case is remanded to that court for proceedings in accordance with this opinion.

*Affirmed with Modifications and Remanded.*