Booth, Judge,
delivered the opinion of the court:
The plaintiff insurance company is a Massachusetts corporation engaged in writing fire and marine insurance. Among other States in which it transacts business is the State of New York, and in order to do so it must comply with the laws of New York relating to a foreign insurance company seeking to write insurance in that State. This the plaintiff did. It acceded to all the requirements exacted *611 of it by the superintendent of insurance and did a large volume of business within that State.
The plaintiff company filed with the Commissioner of Internal Revenue its income-tax return for the year 1916, and on June 15, 1917, paid under protest the tax assessed thereon, amounting to $3,982. Subsequently, on December 8, 1917, the commissioner assessed against the company an additional income tax on the previous return filed of $16,790.65, and on December 18, 1917, this additional tax was paid under protest. On April 80, 1920, plaintiff filed with the commissioner a claim for a refund of the entire sum, viz, $20,772.65, paid as aforesaid, asserting a right thereto under the law. The commissioner refunded $12,016.73 of the tax and rejected the refund claim as to $8,775.92, and it is for the recovery of this sum that the present suit is brought.
The superintendent of insurance of the State of New York exacted of the plaintiff the maintenance of a net addition to its reserve funds of $560,678.43 on account of its liability for unsettled loss claims for the year 1916, and it is stipulated that said said sum was duly added by the plaintiff to meet the requirement. The commissioner treated said net addition to reserve funds as income for the calendar year and assessed and collected the sum herein claimed as an income tax lawfully due thereon.
Section 12 of the revenue act of September 8, 1916, 39 Stat. 765, in subsection (c) provides in the following language for a deduction from the gross income of insurance companies organized in the United States, of “ the net addition, if any, required by law to be made within the year to reserve funds and the sums other than dividends paid within the year on policy and annuity contracts.” The defendant relied upon the above statute for authority to proceed as it did.
The one question, and the only one properly raised, is whether, within the meaning and intent of the Federal revenue act, the net additions so made by the plaintiff to its reserve funds in pursuance of the requirements of the superintendent of insurance for New York, to cover accrued but unsettled loss claims, may be said to be such a fund as *612 comes Avithin the meaning of “ reserve funds,” as those terms appear in the revenue act.
The defendant does not dispute that the sum involved Avas reserved, nor that it was required by the proper insurance authorities of New York to be reserved. Defendant’s argument is predicated upon an assertion that Congress in exempting net additions to reserve funds, clearly intended to exempt only such funds as are technically known and univei’sally understood in the insurance world as reserve funds, and as thus understood the terms have a well defined, limited, and certain status and meaning. We may well grant the contention, but apparently it furnishes no solution for the issue, unless we may find some authoritative decision that unsettled loss claims are not within the meaning of “ reserve funds,” as thus contended for.
Mr. Justice Clarke, in the case of Maryland Casualty Co. v. United States, 251 U. S. 342, 350, defines the terms “ reserve ” and “ reserves,” and the definition therein given Avas elicited by a contention in all respects similar to the one noAv at issue. “ The term ‘ reserve ’ or ‘ reserves ’ has,” he says, “ a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside, ‘ reserved,’ as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, but contingent and indefinite as to amount or time of payment.” In that case, and following the definition thus announced, the Supreme Court did include a loss claims item as part of the reserve required by law to be maintained by' tlie insurance company.
It is true that the insurance laws of New York did not expressly require that such a reserve be maintained, but the regulations of the superintendent of insurance of that State, in pursuance of a most general and plenary authority so to do, did exact it, and disobedience of the insurance laws precluded the conduct of any insurance business in the State by a foreign insurance company. In the Maryland Casualty Co. case, just cited, the Supreme Court decided that regulations of a department of a State government, *613 adapted to the enforcement of an act of that State, had the force and effect of law.
It is difficult, indeed, in view of the above decision, or upon any other logical hypothesis, to exactly comprehend any reason for excluding loss claims items from a legal reserve under the section of the revenue act heretofore quoted. Congress, of course, intended to tax the net income of the insurance company, and in providing exemptions from its gross income was especially concerned with relieving from the tax burden the sums of money or assets of the company which it was obligated by law to set aside as a guaranty and protection to its policyholders. There was manifestly no difficulty in arriving at fixed expenditures and disbursements actually made by the company, but contingent liabilities, contingent claims, and payments of same, an inseparable concomitant of the business itself, was the problem Congress was seeking to solve. If a sum of money had to be set aside and reserved out of gross income to meet a contingent, liability it was an act of .obvious fairness to treat that sunn as exempt from the computations to ascertain net income until the contingency ceased to exist and the liability was discharged. ' As said in the Maryland Casualty Co. case, suyra, when the reserves are released “ to free beneficial use of the company in a real, and not a mere bookkeeping sense,” they are income.
A loss claims reserve is the setting aside of a sufficient sum or assets of the insurance company to assure the final liquidation of losses not yet reported and to be adjusted. The final payment of a loss depends upon a variety, of circumstances. It may be a partial or a total loss; it may involve a contest extending over a long period of time, and many other contingencies may intervene which necessarily require adequate protection for the loser, that in the end his loss, whatever it is, may be made good under the terms of his policy. Assuredly loss claims are to be classified as a liability of the company. For what other purpose are reserves demanded. other than as an assurance against liability ? In this respect the situation is not essentially different from an unearned premium reserve. An'insurance company 'receives a large sum of money as paid premiums upon its policies. *614 When tbe premiums are paid contingent liability under tbe policies attach, and the defendant concedes that a reserve of sufficient proportions to cover reinsurance in the event of insolvency is within the meaning and intent of reserves as that term appears in the revenue act. In loss claims there is a distinct contingency as to amount, and in an unearned premium reserve the contingency is as to time, both furnishing protection to the patrons of the company. The technical reserves required under the law do not in every instance furnish permanent immunity from income taxation. This is clearly demonstrated in the Maryland Casualty Co. case, and whatever the result the statute accords the right.
In deciding the oft-quoted Maryland Casualty Co. case the Supreme Court had before it this identical issue, and it was there determined that as to casualty insurance loss claims were clearly within the meaning and intent of Congress when the twelfth section of the revenue act was enacted. It is true this plaintiff is a fire and marine insurance company, but the reason given for the result in the Maryland Casualty Co. case is not made to depend upon the character of the insurance written, and we can not escape the conclusion that the decision is as applicable here as it was under the facts of the case mentioned.
Where a general law covering a particular purpose confides to a supervising official administration thereof, and in pursuance of said law the supervising official issues regulations in keeping with the same, the regulations so issued have the force of positive law. This has been repeatedly held in numerous decisions of the Supreme Court and made applicable to a department of a State government in the Maryland Casualty Co. case.
The insurance law of the State of New York, applicable excerpts from which are set out in the findings, does not in any express provision require a reserve for loss claims; neither does it enter into detail with respect to any other character of reserve. Regulations of the. superintendent of insurance duly promulgated by him cover the subject, and expressly require a reserve for loss claims, in both fire and casualty insurance. The highest court of New York in *615 91 N. Y. 385 has construed the law, and by its terms, as thus construed and interpreted, the plaintiff’s right to transact business within the State depended absolutely upon its observance of the same. While regulations' of the insurance department by designating certain sums as reserves may not thereby entitle a company to the deductions mentioned in the revenue act, and must observe the plain distinction between reserves as understood in insurance business and the general assets of the company, nevertheless we believe it is made quite clear in the Maryland Casualty Co. case that a reserve for loss claims falls within the revenue act, and the plaintiff is entitled to a deduction for the net additions made to this reserve for the year 1916.
Judgment for plaintiff company in the sum of $8,755.92, with interest at the rate of 6 per cent per annum from December 8,1917, to November 5, 1923. It is so ordered.
Graham, Judge; Hay, Judge; Downey, Judge, and Campbell, Chief Justice, concur.