*Decision will be entered under Rule 50.*

FRANK E. BEST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36746. Promulgated September 30, 1932.

*W. M. Whitney, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

1074

## OPINION.

MATTHEWS: The only question for our determination is whether the petitioner is taxable on the amount of $86,067.18 received by the company in the year 1923, this being the difference between the total amount which the company received from the sale of the stock and the 20 per cent commission. It is clear that the petitioner did not receive any of this amount in cash in 1923, or at any later date, and also that it was not available to him in that year. The respondent determined that under the agreement the company was acting as agent for the petitioner in selling the stock and was to retain 80 per cent of the proceeds as a loan, and that the substance of the transaction was that the proceeds from the sale became income to the petitioner when received by the company.

Counsel for the petitioner enters into a rather lengthy argument in his brief as to the nature of the transaction and makes a great many contentions, some of which are inconsistent. His argument resolves itself, however, into two main contentions—first, that the acts of the parties show that the agreement between them provided for an exchange of stock for the promise of the company to issue promissory notes, which promise had no readily realizable market value, and not a sale by the company as agent for petitioner, and, second, which is really an alternative contention, that even if the agreement of January is one of agency, the oral agreement under which the stock was sold in February is a different agreement providing for an exchange of stock for the promise of the company to issue notes.

With regard to the petitioner's first contention he argues that the corporate minutes in which the company is referred to as the "Agent" are a mere word screen; that the intention of the parties and their acts show that the transaction was an exchange; and that

this is borne out by the fact that the stock was endorsed over to the company; that it was represented to purchasers that the money from the sale of the stock was going into the company's treasury; and that the petitioner did not have any control over the money after it was received by the company. The petitioner and the other two officers of the company testified that the transaction was intended to be an "exchange," but was called one of agency in the minutes on account of the fact that they were told by their attorney that the company could not purchase its own stock out of capital assets. Counsel cites a number of Washington cases to show that the company could have made such a purchase as was here contemplated, but we think this immaterial. It does not matter why they carried out the transaction in the manner they did. The minutes clearly state that the company was to act as agent and the acts of the parties show that this was their intention. In this regard it should be noted that the parties had been informed that the corporation could not sell its own stock; that the petitioner was not to exchange the stock for a definite sum, but he agreed in advance that 80 per cent of the total proceeds should be retained by the company as a loan; and that the petitioner did not transfer a certificate for 100,000 shares, but as subscriptions were paid he transferred approximately enough shares to the company to fill the subscriptions and any shares subscribed but not paid for were later returned to him.

It seems to us that all these circumstances are indicative of the fact that the corporation was to act as agent for the petitioner and that they bear out the corporate minutes, rather than show an intention different from that expressed in the minutes as contended for by the petitioner.

It has been held by the courts and by this Board that receipt by an agent is receipt by the principal and that when the agent receives money or other property belonging to the principal it becomes income to the principal at that time. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342; *Julia A. Strauss*, 2 B. T. A. 598; *L. & M. Holding Co.*, 3 B. T. A. 601; *Estate of C. W. Crews*, 8 B. T. A. 301; and *F. H. Wilson*, 12 B. T. A. 403.

The fact that by the terms creating the agency the principal agrees to allow the agent to retain the proceeds does not change the rule of law that receipt by the agent is receipt by the principal. It has been held many times that the assignment of future income does not relieve the assignor of tax liability. See *Earl* v. *Lucas*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136; *Rosenwald* v. *Commissioner*, 33 Fed. (2d) 423, affirming in part 12 B. T. A. 350; *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 249 Fed. 726; certiorari denied, 246 U. S. 671;

*American Telegraph & Cable Co.*, 2 B. T. A. 991; and *Samuel V. Woods*, 5 B. T. A. 413.

In the case of *Samuel V. Woods, supra*, where the taxpayer had ordered that his lessee pay part of rents and royalties owing to him directly to his wife and daughter, we held that the amounts so paid to the wife and daughter constituted taxable income to the taxpayer, saying:

\* \* \* Such a voluntary act in anticipation of actual receipt and before the income exists can only affect the income when it actually arises, and in our opinion it may properly be treated as coming to him and immediately disposed of. See *Ormsby McKnight Mitchel*, 1 B. T. A. 143.

The case of *A. L. Voyer*, 4 B. T. A. 1192, relied upon by the petitioner, is not determinative of the issue herein. In the *Voyer* case an attorney collected money owing to the taxpayer and refused to pay a part of it which he retained as security for his fee, the amount of which was in controversy. We held in that case that both parties had a claim to the amount retained by the agent and that the taxpayer had no right to receive the full amount, and since it was not known exactly how much he would receive, he was taxable on only the amount actually received from the agent in the taxable year. In the instant case the instrument creating the agency provides that the agent shall retain the proceeds as a loan. It was a voluntary act on the part of the petitioner, and the agent retained the proceeds with the consent of the principal. We do not think that the *Voyer* case is similar to the instant proceeding. See *F. H. Wilson, supra*.

As to the petitioner's second contention, counsel argues that there were three agreements—one, that set forth in the minutes of January 2; the second, an oral agreement entered into in the latter part of January which covered sales made in February; and, third, the agreement set forth in the minutes of June 1—and that the oral agreement of February was clearly an exchange. Counsel does not devote any argument to the agreement of June. We are, however, of the opinion that the stock was sold under one agreement. As we view the testimony, towards the end of January the officers found that they had sold only 23,600 shares of the 100,000 they had hoped to sell and they therefore agreed to continue selling the stock, but at an increased price, and they agreed that the bonus would be removed. They continued to sell it on the same subscription forms as they had in January, to make the same representations to purchasers and to treat the proceeds thereof on the company's books in the same manner. The minutes of June 1 refer to the minutes of January 2 and indicate that the agreement of January was still in force and that the minutes of June were meant to continue that agreement. This seems to corroborate our position that the agreement under which the stock was sold in February was a continuation of the agree-

ment set forth in the minutes of January 2. But, whether we consider this as one agreement or as three separate agreements, the terms are the same. The corporation was to sell stock belonging to the petitioner and to retain 80 per cent of the proceeds as a loan. The evidence does not sustain the petitioner's contention that this was an exchange of stock for the promise to issue notes.

The respondent has taxed the entire net proceeds of the sales to the petitioner and there was no question raised at the first hearing as to the amount of profit taxable. A part of the stock was issued for patents and, in the absence of evidence as to the value of the patents, it is clear that the proceeds from the sale of this stock constitute taxable income in their entirety. However, the testimony in this case shows that a part of the stock was issued to the petitioner in payment of advances which he had made to the company and a part was purchased for cash. The amount which he had advanced to the company was $19,500, for which 26,000 shares of stock were issued to him. There is no evidence as to the amount of cash which he paid for the other shares, and the petitioner himself testified that he could not remember how much he paid for them. The amount of $86,067.18 should accordingly be reduced by $19,500 and the remaining amount of $66,567.18 is taxable to the petitioner.

*Judgment will be entered under Rule 50*