## COMMISSIONER OF INTERNAL REVENUE v. NEW YORK LIFE INS. CO.

No. 236.

Circuit Court of Appeals, Second Circuit.
June 5, 1933.

348

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. F. Greaney, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Louis H. Cooke, of New York City, and Wm. Marshall Bullitt, of Louisville, Ky., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Petitioner seeks a review of an income tax deficiency for 1920, proposed at $3,469,122.40, which was disallowed by the Board of Tax Appeals, and the taxpayer was held to have overpaid $82,420.70. 24 B. T. A. 1217.

Respondent is a New York corporation, engaged in the mutual life insurance business on the level premium plan. It did a worldwide business, having had a large business in Germany and Austria in 1920. Its premiums and benefits were payable in marks in Germany and kronen in Austria. Each country required the annual computation of policy reserve or present value of insurance of the company in force within its own borders and the maintenance of reserve funds of equal amount, which were invested in specified classes of securities. Customarily, a policy was made payable in the currency of the particular country in which it was written and reserves were calculated in the same currency.

Pursuant to section 44 of the Insurance Law of New York (Consol. Laws N. Y. c. 28) on December 31 of each year, the respondent submitted to the state superintendent of insurance, a statement showing its condition and the amount of its reserves. In its annual statement respondent from the beginning included its German and Austrian assets and reserves at 23.8 cents for the mark and 20.3 cents or 20 cents for the krone. This was par for the mark, and the par for the krone was 20.26 cents. In the statement of December 31, 1919, the respondent expressed the mark at 23.8 cents and the krone at 20.3 cents. In 1919 and 1920

there was a violent decline in the value of each; the average market rate in 1920 being 1.63 cents for the mark and .47 cents for the krone. In connection with the statement for the year ending December 31, 1920, when market rates were 1.38 cents for the mark and .25 cents for the krone, the respondent proposed to the superintendent of insurance that, instead of the rate of exchange theretofore employed in computing the reserve, the mark should be converted at 5 cent and the krone at 2 cent rates more nearly corresponding to the then market value. The superintendent's certificate of valuation as of December 31, 1920, was rendered on this basis. The total assets and reserves were first valued and computed exactly as before, and the formal change to the new basis was then made by subtracting in each instance the allowance necessary for the adoption of the new rates.

The report of assets and reserves was then as follows:

| | | |
|---|---|---|
| December 31, 1920: | Assets | $939,328,504 |
| | Reserve | $755,990,360 |
| December 31, 1919: | Assets | $936,509,949 |
| | Reserve | $755,261,263 |
| The difference was an increase of | | |
| | Assets | $ 2,818,555 |
| | and | |
| | Reserve | $ 729,597 |

This was expressed in dollars. The legal reserve, however, was in fact in dollars, marks, and kronen. The assets were also in the same currencies. If expressed in the value of marks at 23.8 cents and kronen at 20.3 cents at the end of 1920—the rates used in the beginning of the year—the ledger assets would have been $976,831,197, and the reserve $790,682,084. Thus there would have been represented increases during the year of assets, $40,321,248, and reserves, $35,420,821.

As the law permitted, section 234 (a) (10) of the Revenue Act of 1918 (40 Stat. 1079), the respondent deducted from gross income as the "net addition required by law to be made within the taxable year to reserve funds" the last mentioned figure, $35,420,821. The Commissioner, however, contends that the net addition required by law was $729,597, the difference in the net value of reserves at the beginning and close of the year as certified by the superintendent on the respondent's report. Thus limiting the deduction to that amount, there was a deficiency tax of $3,469,122.40, which he accordingly assessed. The Board of Tax Appeals disagreed and allowed an overpayment of $82,420.70. In so doing, the Board recognized that the reserve valuation was not the legal reserve, but was a bookkeeping expression in dollars of such reserve in order to present a statement in

dollars. The legal reserve was in fact made up of three separate currencies, and the Board found the market rates of exchange in order to reduce the marks and kronen into dollars. The Board found $36,235,398 was the increase of reserve for 1920, which meant that this sum was the amount by which the reserve required by law on all insurance in force, except in Germany and Austria, at the close of the year 1920, exceeded the corresponding reserve required by law at the beginning of 1920. To this sum was to be added 1,830,253 marks, the amount by which the reserve required by the German law on all insurance in Germany at the close of 1920 exceeded the corresponding reserve required by law at the beginning of 1920. There was to be subtracted 6,250,887 kronen, the amount by which the reserve required by Austrian law on all insurance in force in Austria at the end of 1920 was less than the corresponding reserve required by that law at the beginning of the year. Accepting the rate of exchange of 1.38 cents for the mark and .25 cents for the krone, the market rates of December 31, 1920, the result would be $36,-245,028, which was the net addition, as the Board found, to the reserve funds properly deductible from gross income under section 234 (a) (10) of the 1918 act (40 Stat. 1079).

█ It is argued that the certificates of policy valuations issued by the state superintendent of insurance, pursuant to the provisions of the New York statutes, are binding upon the taxpayer. With this we do not agree. It is admittedly established that the respondent's policy obligations had a net increase during 1920 of $487,555,451, minus 10,224,794 marks, minus 12,371,773 kronen. The reserve had a net increase during the year of $36,-235,398, plus 1,830,253 marks, minus 6,250,-887 kronen. Such net increase in reserve does not necessarily have any fixed relation to the net increase in policy obligations. The decline of the dollar value of the mark and krone did not reduce the dollar amount of reserve funds required to liquidate German and Austrian business because there was no dollar amount of reserve funds for German and Austrian business. The reserves for that business, as required by the laws of Germany and Austria, were so many marks and so many kronen.

██ It is argued that by the adoption at the close of 1920 of new standards for the conversion of marks and kronen surplus reserve funds were released to the respondent as free assets and as such were subject to a tax. Maryland Casualty Co. v. United States, 251

U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297. Therefore, the question is presented as to the determination of the number of dollars, marks and kronen of reserve that the law required the respondent to add during the year in question to the funds necessary to liquidate at maturity the respondent's outstanding policies of insurance. The method of computation accepted by the Board of Tax Appeals was that the rates prevailing at the end of the taxable year, 1.38 cents per mark and .25 cents per krone, should be accepted, which results in the sum of $36,245,028.

The theory on which the addition to reserves allowed as a deduction and decrease in reserves is returnable as income is that these sums when received by the insurance companies and required by law to be kept in reserves, are not received as taxable income, but, when released by a decrease in the reserves required by law, they become income subject to the companies' general purposes and are taxable. Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297. The German and Austrian reserves were required by law to be kept and were calculated in marks and kronen, respectively. The amount of reserves was calculated by applying the same table of mortality and the same interest rate to the face value of the policies in marks and kronen, respectively. As required by law, these reserves were invested in German and Austrian securities, respectively. The fluctuation in the value of these securities, not caused by variation in the rates of exchange, did not alter the amount of reserves required by law, and was not considered in the calculation of that amount. Similarly, fluctuation in the rates of exchange did not alter the amount of reserves required by law to be kept in marks and kronen. The mark may decrease in value in terms of dollars, but an insurance reserve in marks for policies payable in marks is calculated without any reference to the rate of exchange. An increase in the value of the mark in dollars does not add to the amount of the reserve. A decrease in the value of the mark in dollars does not decrease the amount of the reserve or release income to the general purposes of the corporation. If the amount of a reserve in marks were kept in a dollar fund, a different problem would be presented for, as exchange varied, the amount of dollars required to represent the amount of marks would fluctuate.

When the amount of a reserve is altered by variation in the face value of the policies outstanding, life expectancies of policyhold-

ers or interest rate, an addition to the reserve or a decrease returnable as income is obtained. When so obtained, the addition or decrease must be expressed in dollars for income tax purposes in the United States. The law requires the determination of reserve funds at the end of the calendar year, and, so determined, they are required from or released to the taxpayer. It is then that the rate of exchange prevailing determines the amount in dollars.

Apart from the arbitrary rates of exchange adopted, the petitioner's method is fundamentally wrong because the difference between the dollar value of a mark or krone reserve at the beginning of a year and the dollar value of those reserves at the end of the year, is not the same as the dollar value of the increase or decrease in marks or kronen. The law requires that the legal reserves shall be calculated in terms of the one or more currencies in which the obligations are written and that the companies should have assets at least equivalent in value to the reserves. The company might have a large permissible deduction under section 234 (a) (10) because its reserve during the year had greatly increased, and yet by reason of the shrinkage in the value of its assets, a company might have become insolvent. There is no necessary relation between the legally required net addition to reserve and an increase or decrease in the value of its assets. The one is a legal requirement; the other is the actual result of market conditions. Their only relationship bears upon the solvency of the company. The standards used for expressing the mark and krone in dollars did not in any way alter the amount of the policy reserves required by the law to be held by the respondent. Bookkeeping entries alone could have no effect whatever upon reserve assets or free surplus.

The Revenue Act permits deductions of the increase or addition to the mark and krone reserves. It is not concerned with dollar valuation of the total reserve at the beginning or the end of the year, because such valuation does not enter the computation of the amount of the addition to reserve required by law. No deduction was allowed from gross income by reason of any change in the market price of marks and kronen. On the contrary, if a deduction from the respondent's gross income of the value of marks and kronen at the lesser rate of exchange than previously used were allowed, then the result of such a position would have been to increase respondent's tax, as a deduction at the lower rate of exchange would have been very much less than the deduction at the higher rate of exchange.

The respondent did not dispose of its assets. Assets to cover its mark and krone policies by the law of both countries necessarily were mark and krone assets. The method of computation used by the Board was correct.

Order affirmed.