HAWAIIAN-PHILIPPINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69619.   Promulgated December 17, 1936.

*George E. Cleary, Esq.,* and *S. Milton Simpson, Esq.,* for the petitioner.

*H. A. Cox, Esq.,* and *T. A. Dils, Esq.,* for the respondent.

176

OPINION.

HILL: Petitioner is a Philippine corporation which, during the fiscal year ended September 30, 1930, sold in the United States certain sugar which it had received in the Philippine Islands as compensation for milling services. Admittedly it is subject .to the Federal income tax upon any net income derived from sources within the United States, and also it is conceded that if.petitioner realized any net profit from the sale of sugar in this country such profit was derived from these taxable sources. The issue presented for decision is whether or not petitioner in fact realized any net income from such sources during the taxable years, within the purview of the applicable provisions of the revenue act. The parties are in sharp disagreement as to the proper method of determining this question.

In the deficiency notice respondent determined a deficiency of $66,403.47, computed on the basis of a net income of $565,135.94 as shown in schedule 1 of the revenue agent's report, which started with "Net income as disclosed by books", subject to certain adjustments not material here. Thus, the adjusted net income, upon the basis of which respondent determined the deficiency, consisted of the total net income realized by petitioner from all sources, with the

exception of certain items of Philippine income excluded by the revenue agent in the adjustments above referred to.

Respondent does not here contend that the deficiency so determined by him represents petitioner's correct tax liability, nor that the proper method was used for computing petitioner's net income from sources within the United States. On the contrary, respondent now argues on brief that the profits realized by petitioner from the manufacture of raw sugar in the Philippine Islands and its sale in the United States constituted "gains, profits and income from the sale of personal property" produced by petitioner without and sold within the United States, and that the statute requires that such profits should be apportioned between sources within the United States and sources without the United States. Obviously, such an apportionment, to the extent the profits were thereby attributed to Philippine sources, would reduce the amount of the deficiency originally determined by respondent.

Petitioner contends that the provisions of the statute relied on by respondent are not applicable under the facts of this case, and asserts that it sustained a net operating loss of $16,792.45, instead of realizing net income, from sources within the United States during the taxable year.

The pertinent provisions of the statute are quoted in the margin.[1]

---

[1] Revenue Act of 1928—

SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

\* \* \* \* \* \* \*

(e) *Income from sources partly within and partly without United States.*—Items of gross income, expenses, losses and deductions, other than those specified in subsections (a) and (c) of this section, shall be allocated or apportioned to sources within or without the United States, under rules and regulations prescribed by the Commissioner with the approval of the Secretary. Where items of gross income are separately allocated to sources within the United States, there shall be deducted (for the purpose of computing the net income therefrom) the expenses, losses and other deductions properly apportioned or allocated thereto and a ratable part of other expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the United States. In the case of gross income derived from sources partly within and partly without the United States, the net income may first be computed by deducting the expenses, losses or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income; and the portion of such net income attributable to sources within the United States may be determined by processes or formulas of general apportionment prescribed by the Commissioner with the approval of the Secretary. Gains, profits and income from \* \* \* (2) the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States, or produced (in whole or in part) by the taxpayer without and sold within the United States, shall be treated as derived partly from sources within and partly from sources without the United States. Gains, profits and income derived from the purchase of personal property within and its sale without the United States or from the purchase of personal property without and its sale within the United States, shall be treated as derived entirely from sources within the country in which sold, except that gains, profits and income derived from the purchase of personal property within the United States and its sale within a possession of the United States or from the purchase of personal property within a possession of the United States and its sale within the United States shall be treated as derived partly from sources within and partly from sources without the United States.

That petitioner realized substantial net "gains, profits and income" from the operation of its business during the taxable year is not denied. The only controversy between the parties is whether or not any portion of such net income is properly attributable under the statute to United States sources. The statute lays down very comprehensive general rules for determination of the sources of income, and provides that items, either of gross income or deductions, not directly attributable to sources within or without the United States, shall be allocated or apportioned under rules and regulations prescribed by the Commissioner. It is settled that such rules and regulations, if reasonably designed to carry into effect the general provisions of the statute, have the force and effect of law. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 349. However, detailed reference to the regulations promulgated under the quoted statute we think is unnecessary, since the issue goes to the matter of determining the particular source of the gross income rather than to an allocation of gross income from undeterminable sources. As to deductible items of expense not directly attributable to a definite source, there appears to be no controversy respecting the application of respondent's regulations.

Consideration of the general provisions of the statute fails to indicate any intention on the part of Congress arbitrarily to fix the "sources" of income or to give to the term "income" any other than its ordinarily accepted meaning, as defined in *Eisner* v. *Macomber*, 252 U. S. 189. The allocation or apportionment provisions apply, and plainly are intended to apply, only to items of income and deductions which can not properly be ascribed in their entirety to sources within or without the United States. Here we are not dealing with income of that classification, and hence respondent's position, we think, can not be sustained.

Petitioner, under the milling contracts, ground the cane of the planters and manufactured the sucrose content into raw centrifugal sugar, receiving as compensation for its milling services a portion of the sugar, which it sold in the United States. The cane belonged to the planters, and the title to the share of the sugar retained by petitioner passed to petitioner only upon the manufacture thereof. The milling contracts were in the nature of a bailment, not a sale, and petitioner's portion of the sugar constituted income to it at the place and time of receipt to the extent of its fair market value. *San Carlos Milling Co., Ltd.*, 24 B. T. A. 1132; affd., 63 Fed. (2d) 153.

The facts in the cited case, in all material respects, are the same as in the case at bar. There the petitioner operated a sugar mill in the Philippine Islands under contracts with planters of sugar cane whereby it milled the cane produced by the planters and accepted as

compensation for its milling services a percentage of the manufactured sugar. In our opinion, we said, beginning at page 1140.:

The record supports the intent of the parties, as expressed in the contract, to compensate the petitioner for milling the cane into sugar by allowing the petitioner to retain 40 per cent of the sugar produced. * * * The plain language of the contracts and the action of the parties show that these were milling contracts for the manufacture of sugar by the petitioner from the planter's cane and that petitioner was to have a toll or share of the sugar manufactured as compensation for its services. Such provisions would have been wholly unnecessary had the parties to those contracts contemplated a sale of the cane to the petitioner. * * * the transaction contained elements of bailment and lacked elements of sale. * * * The petitioner realized income at the time and place the sugar was received to the extent of its fair market value. * * *

The amount of sugar received by petitioner being stipulated, there remains the question of its fair market value on the several dates when received. There was an established market for 96-degree centrifugal sugar in the Philippine Islands and the record shows that petitioner sold some of its sugar there. We have before us quotations of prices on actual sales of sugar on or about the dates that petitioner received the sugar for its milling services. In the circumstances we hold that the average quoted price on a given date is the fair market value of the sugar received by the petitioner on or about that date. Cf. *Ralph Andrew Applegate, Executor*, 10 B. T. A. 705; *Western Bank & Trust Co.*, 19 B. T. A. 401.

Upon the sale of sugar in the United States the petitioner received income from sources within the United States, even though the sugar was manufactured in the Philippine Islands. See *Porto Rico Consolidated Fruit Co.*, 16 B. T. A. 778, and cases there cited. The amount of that income is the gain derived from the sale, and not the total amount of the sale price received for the sugar. The cost basis of the sugar received as compensation for services rendered in the Philippine Islands and sold within the United States is the fair market value of that sugar at the time received (cf. *W. R. Jacques*, 5 B. T. A. 56; *J. Heninger*, 9 B. T. A. 1318; *William T. Bivin*, 21 B. T. A. 1051), to which should be added the expense incurred by the petitioner in forwarding the sugar to the United States, since the sales were made upon the basis of the price in the United States.

The principles applied in the *San Carlos* case are equally applicable here, and all of the factors mentioned have been established either by stipulations of the parties or by undisputed evidence contained in the record. Based upon such factors and in harmony with the principles referred to, petitioner has appended to its brief a detailed computation which discloses that it sustained an operating net loss during the taxable year from sources within the United States.

Respondent has raised no objection to the deductions from gross income claimed by petitioner, nor otherwise pointed out any error in petitioner's computation, except only in respect of certain specific items as follows:

(1) Respondent takes the position that petitioner has not correctly computed the fair market value of the sugar at its mill, which is used as the cost basis. It is the generally accepted rule that the

value of goods for which there is no local market may be fixed by the value at the nearest market, less the cost of transportation thereto. See 17 C. J. 909, 22 C. J. 189, and authorities cited. The evidence in the record before us shows that there was an established market for raw centrifugal sugar at Iloilo, about 25 miles from petitioner's mill, with daily government quotations. But respondent asserts that petitioner has taken the Iloilo price and instead of deducting therefrom the cost of transporting the sugar to Iloilo to determine the fair market value at the mill, has added 8 centavos to the Iloilo price for lighterage charges. This contention appears to be based upon a misapprehension of the facts.

Petitioner's computation starts with the Iloilo price and makes certain compensating adjustments necessary to reflect the value at the mill. A small portion of the sugar was transported from petitioner's dock to Iloilo at a cost of 12 centavos per picul, and was later transported by lighter from the warehouse in Iloilo to steamers in Iloilo harbor at an additional cost for lighterage of 8 centavos per picul. The balance of the sugar was lightered directly from petitioner's dock to steamers in Iloilo harbor at a cost of 15 centavos per picul.

For convenience of computation petitioner first valued all the sugar at the Iloilo price, and then with respect to the sugar actually transported to Iloilo, excluded from United States deductions the cost of such transportation, but added to the Iloilo price the 8 centavos per picul for lighterage to the steamers. This latter item was properly treated as a part of the cost of getting the sugar from Iloilo to the United States, and the result is precisely the same whether the amount be deducted from the gross proceeds of sale as expense or added to the cost basis and deducted, as it was treated by petitioner. The sugar could not be shipped directly from petitioner's mill to the United States but had to be lightered to steamers in Iloilo harbor.

As to the balance of sugar, which was taken by lighter directly from petitioner's dock to steamers in Iloilo harbor, petitioner valued at the Iloilo price, plus the 8 centavos cost for lighterage to the steamers. The transportation cost from the mill to Iloilo is excluded from United States deductions. As above pointed out the lighterage cost at Iloilo is a proper United States deduction, and petitioner has merely added that amount to the Iloilo price instead of deducting from the proceeds of sale as expense.

Thus, as to both classes of sugar, petitioner's computation reflects exactly the same result as would be obtained by taking as the fair market value of the sugar at the mill the Iloilo price, less the cost

of transportation to Iloilo, and then treating all subsequent costs of transporting and selling as deductions from gross proceeds of sale in the United States. We find no merit in respondent's contention on this point.

(2) The second item to which respondent objects is the deduction of commission paid by petitioner to its general agent for selling the sugar in the United States. Respondent argues that the amount should be apportioned between sources within and without the United States. There is no contention that if the amount in controversy was in fact paid as commission for selling the sugar in the United States, it would not properly be deductible, but respondent asserts that it was compensation to the agent for its general services and not exclusive selling commission. The record, we think, does not sustain respondent's contention. The evidence clearly establishes that the petitioner paid to Welch-Fairchild, Ltd., 75,274.77 pesos under the terms of the agency contract as "a commission of 2½% on the total sales of sugar in the United States." It was not compensation for any other services, but constituted in its entirety commission on United States sales. We hold that the deduction claimed is allowable.

(3) Petitioner paid to the Philippine Government a sales tax in the amount of 25,067.46 pesos on the sugar sold in the United States, which amount is claimed as a deduction from United States income. Respondent assails this deduction on the ground that the amount represents an expenditure which petitioner in any event would have been compelled to make in order to receive the Iloilo price, and argues that the result of petitioner's computation is to charge the tax against United States income twice, first when it is included in the Iloilo price, and again when deducted from United States income as a selling expense. Respondent presents a novel contention on this point, and one which we think can not be sustained.

We can find no justification for concluding that the Iloilo price "included" the Philippine sales tax any more so than commissions, handling charges, transportation costs, or other expenses necessarily incurred in obtaining such price. We have reached the conclusion above that petitioner realized income in the Philippine Islands to the extent of the fair market value of the sugar at the mill when received. The word "income" as so used refers to gross income. It is immaterial whether petitioner derived any net income from the receipt of the sugar as compensation for milling services. The fair market value of the sugar at the time and place of receipt constitutes the cost basis of the sugar sold in the United States, and we are not advised of any judicial decision which holds that such value is to be determined by deducting from current market quotations the expense of

selling the property. Ordinarily, expenses of selling are treated as deductions from gross income in computing net income, and do not enter into the determination of the fair market value. Market value, within the generally accepted meaning of that term, is defined as "the price at which a seller willing to sell at a fair price and buyer willing to buy at a fair price, both having reasonable knowledge of the facts, will trade." *Mount* v. *Commissioner* (C. C. A., 2d Cir.), 48 Fed. (2d) 550, 552. See also article 1563 of respondent's Regulations 45.

The Revenue Act of 1928, in section 23 (c), provides that "Taxes paid or accrued within the taxable year" (with exceptions not applicable in this case) shall be allowed as deductions in computing net income. Since the taxes in controversy were paid during the taxable year solely on sugar exported to the United States, the amount in its entirety is properly deductible from gross income from sources within the United States, and there is no occasion to apply the apportionment provision of section 119 (e), *supra*.

(4) The remaining deduction to which respondent takes exception involves a portion of the income tax paid by petitioner to the Philippine Government, measured by its income from all sources. The total amount of this tax was 29,578.60 pesos, of which petitioner deducted from United States income 5,579.77 pesos. Respondent argues that this deduction should be disallowed for the reason that petitioner's computation shows that it received a *net income* of more than half a million dollars from Philippine sources and sustained a *net loss* from sources within the United States. Petitioner replies that it allocated the tax on the basis of the *gross income* derived from sources within and without the United States, in accordance with respondent's own regulations.

However, decision of this question is not required since in any event, whether the disputed deduction is or is not properly allowable, the facts establish, and we so find, that petitioner derived no net income during the taxable year from sources within the United States. It is not important that we determine the amount of the operating loss sustained by petitioner from sources within the United States. It follows there is no tax due, and there is no question of overpayment. In these circumstances, no necessity appears for a recomputation under Rule 50.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*