# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1325

_____

Keith Scherbart; Janet Scherbart,     *
                                *

          Appellants,     *
                                *    Appeal from the

    v.                          *    United States Tax Court.
                                *

Commissioner of Internal Revenue,     *
                                *

          Appellee.       *

_____

Submitted:  March 13, 2006
Filed:  July 5, 2006

_____

Before ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Keith and Janet Scherbart appeal the ruling of the tax court[1] that they were not entitled to defer as income on their joint tax returns payments that Mr. Scherbart received from a corn-processing cooperative. We affirm.

Mr. Scherbart, a corn farmer, was a member of the Minnesota Corn Processors (MCP) cooperative during 1994 and 1995. As a member of MCP, Mr. Scherbart was obligated to make three deliveries of corn per year, with the total number of bushels

---

[1]The Honorable John J. Pajak, Special Trial Judge. *See* 26 U.S.C. § 7443A.

delivered equaling the number of "units of equity participation" that he held in the cooperative. MCP processed the corn that it held and sold the processed product to third parties. Its members received contemporaneous payments for their deliveries, as well as "value-added" payments derived by splitting MCP's net proceeds at the end of each fiscal year among the units of equity participation.

In August of 1994 and 1995, Mr. Scherbart received letters from MCP that advised him that value-added payments would be calculated after MCP's annual audit and would be paid out in mid-November. The letters offered the option to have these payments deferred until January of the next taxable year. Each year, Mr. Scherbart elected to defer the value-added payment. The Scherbarts filed joint tax returns that listed the value-added payments as income for the years that Mr. Scherbart received them.

In 1998, the IRS issued a notice of deficiency to the Scherbarts based on the contention that they could not defer the value-added payments as income because those payments were earned and payable in the preceding taxable year. The Scherbarts filed a petition with the tax court challenging the decision, and the tax court ruled in favor of the IRS. The tax court held that MCP was Mr. Scherbart's agent, and that because the proceeds from the sale of Mr. Scherbart's corn were in MCP's possession during its fiscal year and Mr. Scherbart imposed the limitation that kept MCP from sending him the payments in November, the proceeds were received by the taxpayers at that time.

The parties agree that MCP acted as Mr. Scherbart's agent for purposes of processing and marketing the corn, and a written agreement between MCP and its members reflects the agency relationship. *Cf. Bot v. Commissioner*, 353 F.3d 595, 601 (8th Cir. 2003). The parties disagree, however, on the legal consequences of the relationship. The Commissioner contends that receipt by MCP, the agent, amounts to receipt by Mr. Scherbart. The Scherbarts, however, maintain that the IRS is

required by statute to treat the deliveries of corn to MCP as an installment sale and that under the installment method of reporting, the value-added payments should have been recognized in the taxable years in which they were sent by MCP. *See* 26 U.S.C. § 453. We review the factual findings of the tax court for clear error, and review its interpretation of the tax laws *de novo*. *See id.*

Under the Internal Revenue Code, an "installment sale" is "a disposition of property where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs," and the income from such sales generally will be accounted for by using the "installment method." 26 U.S.C. § 453(a), (b)(1). While the installment method is not used for "dealer dispositions," which include dispositions of personal property by someone who regularly disposes of property of a particular type on the installment plan, 26 U.S.C. § 453 (b)(2)(A), (l)(1)(A), the disposition of farm property such as the corn in this case is not considered a "dealer disposition" and thus the installment method may be used, 26 U.S.C. § 453(l)(2)(A). The Scherbarts argue that because Mr. Scherbart made dispositions of corn to MCP, the value-added payment is simply a final installment in payment for that corn. Under § 453(l)(2)(A), recognition of the value-added payments would thus occur in the taxable year in which MCP transferred them to the Scherbarts.

The success of the Scherbarts' installment-sale theory depends entirely on characterizing the corn deliveries and subsequent payments as sales transactions. An equity disclosure statement, which describes the obligations of MCP and its members, however, does not refer to the transactions as sales. It talks about deliveries and payments, but at no point does the agreement establish that ownership of the corn passes from the member to MCP. We noted in *Bot*, 353 F.3d at 601-02, that MCP's "program operated on the basis that [the members] were producers or owners of the corn delivered under the program and that MCP acted as their agent in further processing and marketing the corn." *Bot*'s holding would collapse into nonsensicality if MCP owned the corn in question; MCP's agency with regard to processing and

marketing is meaningful only if the corn is owned by the member after delivery. Since *Bot* dealt with the same type of relationship and transaction as this case does, we hold that the transactions at issue here were not sales.

Because the value-added payments are not installments pursuant to an installment sale agreement, we turn to the Scherbarts' argument that Mr. Scherbart did not receive the payments when MCP first made them available to members. They contend that because Mr. Scherbart elected to defer receipt of any post-audit value-added payment in August, before MCP had calculated whether such a payment would be made at all, the payment should be recognized as income in the following taxable year, not the taxable year in which he had the first opportunity to receive the value-added payment.

The general rule is that receipt by an agent is equivalent to receipt by the principal, *Maryland Casualty Co. v. United States*, 251 U.S. 342, 347 (1920), even if the agent agrees not to distribute income to the principal until the following year. *See Crimmins v. United States*, 655 F.2d 135, 138 (8th Cir. 1981). Self-imposed limitations on receipt do not trump this rule. *Arnwine v. Commissioner*, 696 F.2d 1102, 1109 (5th Cir. 1983). Because Mr. Scherbart's deferrals of the value-added payments were self-imposed limitations, the payments were received when they were held by Mr. Scherbart's agent, MCP, in the years before the payments were sent to Mr. Scherbart.

The Scherbarts seek to rely on *Schniers v. Commissioner*, 69 T.C. 511, 516 (1977), which permitted a farmer to report income from what were termed "Deferred Payment Contract[s]" for the year in which he received the payments; the court ruled for the taxpayer because the Commissioner failed to show that the sales agreements, which specifically required the deferred payments, were "shams." *Id.* at 519. But in *Schniers* the transaction was unquestionably a sale, and the payments were to be received by the taxpayer-seller from the agent for the buyer. *Id.* at 516-19. Here, the

relevant sale was between MCP and the buyers of processed corn products, not MCP and the Scherbarts, and MCP was Mr. Scherbart's agent. Therefore requiring that the Commissioner prove that any sale was a sham in order to invalidate the deferred payment agreement is inapposite; the agreement in question here is simply not a sale.

Given the agency relationship between MCP and Mr. Scherbart and the voluntary nature of the deferral, the tax court did not err in finding that the Scherbarts received the value-added payments in the taxable years in which they were calculated. The Scherbarts received the value-added payments in November of 1994 and 1995. They were therefore not entitled to defer recognition of the payments as income until the next taxable year.

We affirm the judgment of the tax court.

_____