[Civil No. 4449. Filed March 23, 1942.]

[123 Pac. (2d) 828.]

PIONEER MUTUAL BENEFIT ASSOCIATION, a Benefit Corporation, Appellant, v. CORPORATION COMMISSION OF THE STATE OF ARIZONA, and AMOS A. BETTS, Chairman; WILSON T. WRIGHT, Commissioner, and WILLIAM (BILL) PETERSEN, Commissioner, as Members of the Corporation Commission of the State of Arizona, Appellees.

Mr. Ross F. Jones, for Appellant.

Mr. Joe Conway, Attorney General, Mr. Edward P. Cline, Assistant Attorney General, Messrs. Stockton and Karam, Messrs. Phillips, Holzworth, Phillips & Jones, for Appellees.

Mr. Robert R. Weaver, *Amicus Curiae.*

McALISTER, J.—The Pioneer Mutual Benefit Association, a corporation organized and doing business under the Arizona Benefit Corporation Law of 1937, Code 1939, section 53–601 et seq., with its principal place of business in Phoenix, Arizona, filed this action for a declaratory judgment against the Arizona Corporation Commission and its three duly elected, qualified and acting members, Amos A. Betts, Wilson T. Wright and William Petersen, to determine the repective rights of these parties under that law relative to the creation of a mortuary and reserve fund and the proportionate part of each periodic payment (premium) for a benefit certificate that should be set aside to it.

The Arizona Benefit Corporation Law of 1937, an act relating to benefit corporations, is an amendment of the statute providing for benefit societies found in sections 607 to 610, Revised Code of 1928. It permits the formation of corporations to provide cash benefits for members and the nominees of deceased members, but not for profit, and includes all corporations, societies and associations operating an insurance business where funds are provided by mutual contributions, periodical payments, dues or assessments, except those exempt by its terms. It requires that any benefit corporation, before soliciting applications for benefit certificates, shall secure from the corporation commission its approval of the certificate. In an endeavor to comply with this provision the plaintiff filed on May 19, 1941, with the commission, a copy of a benefit certificate which it proposed to use in soliciting applications therefor, and it alleges that this certificate conforms with the requirements of the Arizona Benefit Corporation Law of 1937, in every respect, in that it specifies, first, the maximum amount, not exceeding $5,000 on the life of any individual, to be paid on the happening of the contingency therein stated; second, at least fifteen days grace following the due date of any periodical payments or dues, during which time the certificate could not be forfeited; and third, periodical payments and dues (premiums) sufficient to pay the benefit claims and general operating expenses. But, notwithstanding it meets these requirements, the defendants failed within three days, from the filing of the application, or at all, to issue to plaintiff a written certificate of approval and authority to solicit applications therefor, its refusal in this respect being made known to plaintiff by a letter, dated May 26, 1941, and signed by the corporation commission's director of insurance, Roy B. Rummage, a copy of which is attached to the complaint.

■ The first question in dispute is whether the 1937 law makes it mandatory on plaintiff, and all other benefit corporations formed under it, to ''specify and state in all benefit certificates issued pursuant to said law, and in the benefit certificate herein involved especially, the basis, or amount to be set aside to the mortuary and reserve fund.'' The plaintiff says it does not and bases its contention on section 53–609, subdivision (b), Arizona Code Annotated 1939, reading as follows:

''(b) A mortuary and reserve fund, exclusive of other assets, may be created, out of which may be paid all benefit claims arising under the certificates, the deposits required to be made with the state treasurer as provided by section 608b (§ 53–605), and attorney's fees and necessary expenses arising out of the defense, settlement, or payment of any contested or disputed claim. The residue of payments made by members, after setting aside the amount required for the mortuary and reserve fund, and interest earned by the assets of the corporation, whether deposited with the state treasurer or otherwise invested, may be used for general operating expenses.''

Because the word ''may'' instead of one of stronger compulsion is used here, the plaintiff insists that the law permits, but does not require, the creation of a mortuary and reserve fund. It is, of course, true, that ''may'' standing alone and unrelated to its context, is usually permissive in meaning. 59 C. J. 1079, and 1080. But in the same volume of Corpus Juris, at page 1082, is found this language:

''Where, from a consideration of the whole statute, and its nature and object, it appears that the intent of the legislature was to impose a positive duty rather than a discretionary power, the word 'may' will be held to be mandatory. A mandatory construction will usually be given to the word 'may' where public interests are concerned, and the public or third persons have a claim *de jure,* that the power conferred should

be exercised, or whenever something is directed to be done for the sake of justice or the public good; . . . ''

■ A consideration of the Benefit Corporation Law of 1937, in its entirety, its nature and purpose, leads to the conclusion that the legislative intent was to impose upon all benefit corporations, organized under it, the duty of stating in each benefit certificate issued by it the proportion of each payment made therefor, periodic as well as original, that would be set aside to the mortuary and reserve fund. This appears clearly from section 53–606, subdivision (a), which makes this definite statement:

''(a) Every benefit certificate issued by any such corporation shall specify the maximum amount not exceeding five thousand dollars ($5,000), on the life of any individual, to be paid on the happening of the contingency therein stated, *and shall state the basis or amount to be set aside to the mortuary and reserve fund*. . . . '' (Italics ours.)

The requirement that such a statement be incorporated in all benefit certificates automatically creates a mortuary or reserve fund, because the legislature certainly did not impose this duty on a benefit corporation and then permit it to set aside the amount named to that fund provided it saw fit to do so. To say the legislature meant this would be to charge it with requiring a useless, futile act, one, in fact, rendering it possible for a corporation organized under this law to mislead or deceive by making it appear to the purchaser of the certificate, and others who might read it, that a sufficient portion of the amount paid in by the purchaser would be set aside to pay benefit claims and general operating expenses as stipulated therein, when in fact it was merely discretionary with the corporation whether it did this. Other provisions of the Benefit Law of 1937, strengthen the view that it requires the creation of a mortuary and reserve fund.

Section 53–609, subdivision (a) provides:

"Every benefit corporation shall *provide in its benefit certificate* for periodical payments or dues sufficient to pay benefit claims and general operating expenses as stipulated therein." (Italics ours.)

In subdivision (b) of this section, quoted above, will be noticed this statement:

" . . . The residue of payments made by members, after setting aside the amount *required* for the mortuary and reserve fund, . . . " (Italics ours.)

And section 53–612 exempts from attachment, in the following language, money paid to any benefit:

"*Exemption from attachment.*—No money paid or to be paid for any benefit, as provided in a certificate issued by a corporation organized or operating under the provisions of this act, shall be liable to attachment or other process, nor may it be seized, taken, appropriated or applied by any legal or equitable process, nor by operation of law to pay any debt or liability of any member or his nominee, except as may be provided in the benefit certificate."

It appears that only moneys paid for any benefit, as provided in the certificate issued by the corporation, shall be exempt from attachment. Hence, if the certificate makes no provision for a benefit, there would appear to be no funds upon which this section could operate. While it is true all dues or premiums are paid in for the purpose, among others, of taking care of benefit claims later on, yet, unless a certain portion of them is set aside to a special fund for that purpose, for instance, a mortuary fund, it is very questionable that they would be exempt from attachment. This thought is suggested by section 53–605 which requires the corporation to deposit with the state treasurer $1,000 before the corporation commission may issue it a certificate to transact business, a sum that must be later increased to $10,000, yet under subdivision

(d) of this section, reading as follows, this entire amount is subject to execution:

"(d) Any unsettled final judgment of a court of this state shall be a lien on the deposits of money or securities prescribed by section 608b (§ 53–605), and subject to execution after thirty (30) days from entry of final judgment. If said deposit is depleted thereby it shall be replenished within ninety (90) days."

Section 53–610, Arizona Code Annotated 1939, provides as follows:

"At least once in every two (2) years the corporation commission shall require the books and the affairs of each benefit corporation to be examined and audited by an accountant designated and commissioned by it, for the purpose of verifying the funds as provided in the benefit certificate thereof. . . . "

There are but two funds provided for in the Benefit Corporation Law of 1937, one the deposit required to be made with the state treasurer just mentioned, and the other the mortuary and reserve fund. If a benefit corporation may or may not, at its option, create and maintain a mortuary and reserve fund, there would, in case it decided not to create and maintain such a fund, be but one fund, to-wit, the one deposited with the state treasurer, and in such instance there would be no "funds as provided in the benefit certificate thereof," to be verified by an examination.

The word "may" according to the authorities, is read "shall" or "must" when used in the statute to impose a duty, the performance of which involves the protection of public or private interests. *Mooney* v. *Drainage District No. 1,* 126 Neb. 219, 252 N. W. 910; *People* v. *Commissioners,* 4 Neb. 150. And in *Arizona Corporation Commission* v. *Heralds of Liberty,* 17 Ariz. 462, 154 Pac. 202, 205, this court construed the word "may" in the clause: "the Corporation Commission may issue a license to such society

to do business in this state until the first day of the succeeding April," to be the equivalent of "shall." See, also, *Palmcroft Development Co.* v. *City of Phoenix,* 46 Ariz. 400, 51 Pac. (2d) 921, 103 A. L. R. 811; *Rock Island County Supervisors* v. *United States,* 4 Wall. 435, 71 U. S. 435, 18 L. Ed. 419.

■ The plaintiff contends, however, that even though it is necessary that it state in the certificate the portion of the premium to be set aside to the mortuary and reserve fund, and that it create and thereafter maintain such a fund, the corporation commission has no power to determine how much shall be set aside to that fund, but that this is wholly within the power of the plaintiff to decide, and hence the order of the court upholding the action of the corporation commission in directing that at least fifty per cent of the premiums be set aside for this purpose is erroneous. The position of the commission is that since plaintiff is required to create the mortuary and reserve fund from the premiums, the law necessarily implies that it make the percentage of the premiums set aside high enough to pay the benefit claims arising under the certificate and that in its best judgment this would require at least fifty per cent of the premiums paid therefor. If this contention is not sound the plaintiff may, defendants contend, state any amount it sees fit, even one per cent, and though it would not be sufficient to protect the holders of certificates it would be a compliance with the statute and require approval by the commission. It will be observed that section 53–606, subdivision (a) *supra,* provides that "every benefit certificate issued by any such corporation shall . . . state the basis or amount to be set aside to the mortuary and reserve fund," that section 53–609, subdivision (b) requires it to create such a fund, and that this same section states, in subdivision (a), *supra,* that "every benefit corporation shall provide in its

benefit certificate for periodical payments or dues *sufficient to pay benefit claims and general operating expenses* as stipulated therein.'' There can be no question, therefore, but that under these provisions the amount to be set aside to the mortuary and reserve fund must be sufficient to pay benefit claims and general operating expenses before ''the certificate conforms to the requirements of this act'' (sec. 53–611, *supra*), and before the duty of the corporation commission prescribed by this section to ''issue a written certificate of authority to the corporation to transact business'' arises.

The legislature has, in the Benefit Corporation Law, imposed upon the corporation commission the duty of seeing to it that the premiums paid for benefit certificates (insurance policies) are sufficient to pay benefit claims. If in its judgment the premiums proposed in any certificate submitted to it for approval are not sufficient for this purpose, it would be its duty to refuse to authorize the corporation to solicit applications therefor, unless the corporation should not only make the premiums sufficient for this purpose, but also state in the certificate what percentage thereof it is setting aside to the mortuary and reserve fund and it should appear to the commission that the amount set aside is high enough to take care of the benefit claims that might arise under it. If the commission should require a larger premium than necessary or that a greater proportion of those paid be set aside to the mortuary fund than the payment of benefit claims and general operating expenses would demand, the corporation could, in a proper action, have the commission lower it to the proper amount. But, as we see it, the legislature has placed in the jurisdiction of the corporation commission, a disinterested body to whose management the law has committed the insurance department of the state, complete power to

see that benefit corporations, organized under the law of 1937, pay proper premiums and create out of them a mortuary and reserve fund large enough to take care of the benefit claims and general operating expenses arising thereunder.

In view of the specific duties imposed upon the commission, by the Benefit Corporation Law of 1937, we are unable to see wherein the sections of the state constitution providing that public service corporations only may be regulated by the corporation commission has any relevancy.

The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.