RELIANCE BENEFIT ASSOCIATION, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107904. Promulgated June 1, 1943.

*A. Henderson Stockton, Esq.*, for the petitioner.
*Samuel Taylor, Esq.*, for the respondent.

### OPINION.

ARUNDELL, *Judge:* The Commissioner determined deficiencies in income tax for the years 1937 and 1938 in the respective amounts of $253.69 and $246.09. He held that petitioner was not a life insurance company because none of its reserve funds were held for the fulfillment of life insurance contracts within the meaning of section 201 of the Revenue Acts of 1936 and 1938 and the regulations promulgated thereunder. The facts are found as stipulated. Petitioner's returns were filed in the district of Arizona.

Petitioner was incorporated in Arizona on March 11, 1937. On June 12, 1937, the Arizona Benefit Corporation Law of 1937[1] was enacted, which had for its purpose the regulation of benefit corporations similar to petitioner. The statute requires that each policy issued by a benefit corporation shall provide for periodical payments or dues sufficient to pay benefit claims and general operating expenses, and that each policy shall state the basis or amount of premiums to be set aside to a mortuary and reserve fund. Section 11 of the act requires the submission of each form of policy to the Arizona Corporation Commission, and the commission is directed to issue within three days a written certificate of authority to transact business with respect to the policy or certificate if it conforms to the requirements of the act. Section 9 (b), dealing with the creation of a mortuary fund, reads as follows:

(b) A mortuary and reserve fund, exclusive of other assets, may be created, out of which may be paid all benefit claims arising under the certificates, the deposits required to be made with the state treasurer as provided by section 608 (b), and attorney's fees and necessary expenses arising out of the defense, settlement, or payment of any contested or disputed claim. The residue of payments made by members, after setting aside the amount required for the mortuary and reserve fund, and interest earned by the assets of the corporation, whether deposited with the state treasurer or otherwise invested, may be used for general operating expenses.

While section 9 (b), *supra*, provides that a reserve fund "may" be created, the Supreme Court of Arizona has interpreted this provision, from the nature and purpose of the act, "to impose upon all benefit corporations * * * the duty of stating in each benefit certificate issued by it the proportion of each payment * * * that would be set aside to the mortuary and reserve fund." *Pioneer Mutual Benefit Association* v. *Corporation Commission*, 123 Pac. (2d) 828. Not only is there a duty to create such a fund, but the court construed the act as delegating to the corporation commission the power and duty to require that the reserve so established shall be sufficient to pay all benefit claims under the policies. The court said:

The legislature has, in the Benefit Corporation Law, imposed upon the corporation commission the duty of seeing to it that the premiums paid for benefit certificates (insurance policies) are sufficient to pay benefit claims. If in its judgment the premiums proposed in any certificate submitted to it for approval are not sufficient for this purpose, it would be its duty to refuse to authorize the corporation to solicit applications therefor, unless the corporation should not only make the premiums sufficient for this purpose, but also state in the certificate what percentage thereof it is setting aside to the mortuary and reserve fund and it should appear to the commission that the amount set aside is high enough to take care of the benefit claims that might arise under it. * * *

In discharging its duties under the Benefit Corporation Law of 1937 the state corporation commission required that reserves created by bene-

---

[1] Arizona Code, 1939, secs. 53-601, *et seq.*

fit corporations be calculated upon the basis of the American Experience Table of Mortality, with 3½ percent accretions, or the approximate equivalent thereof. Consequently, it has approved the use of policies providing for reserves computed upon recognized mortality tables and assumed rates of interest, as well as policies providing for a reserve of at least 50 percent of all premiums after the first year from date of issuance, if the premiums under the latter type of policies are sufficient that a reserve so computed will be substantially equivalent to one based upon accepted mortality tables. In order to determine whether the rates of premiums are sufficient for this purpose, the commission has referred all policies, prior to their approval, to an insurance actuary; and the commission has approved policies which, according to the actuary's report, proposed a reserve fund equivalent to one based upon the American Experience Table of Mortality, with 3½ percent accretions.

At all times material to this proceeding petitioner has been engaged in business under this statute. During the tax years it issued six different policies of combined life, health, and accident insurance. Its only income for the tax years consisted of premium payments upon such policies. All of its income for 1937 and all but $154.49 of its income for 1938 consisted of premiums upon four types of policies which provided that their mortuary and reserve basis should be computed according to the American Experience Table of Mortality, with interest at 4 percent per annum. The two additional policies, from which premiums aggregated $154.49 in 1938. provided that 25 percent of all premiums received during the first year and 50 percent of all subsequent premiums should be placed in a mortuary and reserve fund. Each of these policies was submitted to the Arizona Corporation Commission for approval, as required by law. In accordance with its practice and rulings, as above stated. the four policies carrying actuarial reserves were approved; and the other policies, carrying rates of premiums which on a percentage of premiums basis would create a substantially equivalent reserve, were likewise approved after submission to an actuary.

Mortuary and reserve funds were created and maintained by petitioner in accordance with the provisions of the several policies. The reserve funds created and maintained by petitioner for the purpose of paying the benefits provided for in the several policies comprised more than 50 percent of its total aggregate reserves for all purposes throughout the years 1937 and 1938.

As defined in the 1936 and 1938 Revenue Acts, a life insurance company is "an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its

total reserve funds." Sec. 201 (a). The only policies issued by petitioner were combined life, health, and accident insurance policies, and we take the stipulation of the parties (that more than half of petitioner's reserve funds were held for the purpose of paying the benefits provided for in its policies) to mean, within the statutory definition, that more than 50 percent of its reserves were held for the fulfillment of its contracts of combined life, health, and accident insurance.

For many years the Treasury regulations have provided that no reserve shall be regarded as held for the fulfillment of insurance contracts under section 201 (a) unless it conforms to the definition of "reserve" contained in the article promulgated under section 203, dealing with a deduction based upon the mean of reserve funds required by law. See Regulations 94 and 101, arts. 201 (a)–1 and 203 (a) (2)–1. Under that definition the appropriate reserve generally "is a sum of money, variously computed or estimated, which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. It must be required either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory, or the District of Columbia when promulgated in the exercise of a power conferred by statute * * *" "Only reserves which are so required, which are peculiar to insurance companies, and which are dependent upon interest earnings for their maintenance will be considered." The validity of such regulations has been recognized by this and other courts. *Swift & Co. Employees Benefit Association*, 47 B. T. A. 1011, and cases cited therein; *First National Benefit Society* v. *Stuart*, 143 Fed. (2d) 438; and the substance of them has now been expressly incorporated in the statute. Revenue Act of 1942. sec. 163.

Respondent appears to concede in the present case that petitioner was required by law to maintain the reserve in question. Whether conceded or not, we think this necessarily follows from a consideration of the Arizona statute, the opinion of the State Supreme Court in *Pioneer Mutual Benefit Association* v. *Corporation Commission, supra,* and the rulings of the corporation commission.

Respondent contends, however, that the reserves in question were not required by law within the meaning of the regulations because, under some of the policies they were not computed upon an actuarial basis and, further, as to all of the policies, "whether in fact computed on an actuarial basis or not, they are not required by law to be computed on an actuarial basis." The cases primarily relied upon for this argument are *Independent Life & Accident Insurance Co.*, 47 B. T. A. 894; *United Life Insurance Co.*, 47 B. T. A. 960; and *Swift & Co. Employees Benefit Association, supra.* Since the submission of briefs

another case of a similar nature, *General Life Insurance Co.*, 1 T. C. 555, has been decided.

The purpose of a life insurance reserve is to put the company in funds with which to meet its contingent liabilities upon the happening of the events insured against, the deaths of its policyholders. Unlike practically all other insurance, life insurance entails a liability predicated upon an event that is certain to occur, the only uncertainty resting in the element of time. The commonly accepted method, perhaps the only reasonably accurate one, of determining how much of each current premium should be set aside to mature the policies is by recourse to recognized tables of mortality experience. Once this has been done by the proper state officials and the approximate requisite amount has been ascertained, we see no objection to expressing an equivalent reserve in other terms, as, with respect to two of the policies in this case, upon a flat percentage of premiums. Certainly the nature and purpose of the reserves are the same in either event. So long as a company is required by law to maintain a reserve, and the required reserve will be sufficient, upon comparison with reserves based upon experience tables, to enable the company to liquidate its policies, the purpose of the reserve requirement of the statutory definition has been met. Such a reserve, we think, is held for the fulfillment of life insurance contracts within the meaning of the revenue acts.

This conclusion does not appear to be opposed to the regulations. They do not expressly prescribe that the reserve must be actuarially computed; in fact, "reserve" is there defined as a sum of money "*variously computed or estimated*" which with interest will be sufficient to satisfy future unaccrued claims under the policy. We are not advised what meaning respondent would attribute to the emphasized words if only reserves actuarially computed are to be recognized. Moreover, it is to be noted that in the Revenue Act of 1942 Congress expressly adopted the Treasury's definition of reserve funds, section 163 (a), adding, however, that the reserves must be not only required by law but "computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interest * * *." That this was an additional factor not theretofore required by the regulations appears from House Report 2333, 77th Cong., 1st sess., p. 109:

* * * The definition is substantially that contained for many years in the regulations *with the addition that the reserves must be based on recognized experience tables* * * * [Emphasis added.]

It is stipulated that the purpose of the Arizona Corporation Commission was to require a mortuary fund for the payment of benefit claims approximately equivalent to a reserve calculated upon the basis of the American Experience Table of Mortality, with 3½ per-

cent interest. To effectuate that purpose each policy was referred to an actuary to determine whether the premiums were adequate to maintain sufficient reserves "as required by statute and by the orders of said Commission." The commission was assured by the actuary that petitioner's proposed reserve would amount to approximately as much as a reserve created by using the American Experience Table of mortality and 3½ percent accretions. We have not overlooked the statements in the agreed facts that "no stipulation is made or intended, either directly or inferentially, as to the correctness or incorrectness of the actuary's report" or "as to whether or not such purpose and intent [of the commission] were carried out." It is difficult to determine the significance to be given these qualifications. It is stipulated that reserves were maintained in accordance with the policies, and if the actuary's report was correct it follows that the purpose of the commission was fulfilled. We think it fair to presume that the actuary's report. upon which state officials were willing to proceed, was accurate. Those officials were charged by law to see to the proper maintenance of sufficient reserves. They required the approximate equivalent of a reserve calculated upon the American Experience Table of Mortality. with 3½ percent accretions. and to apply this test to proposed reserves they acted upon the advice of an insurance actuary. We think it is sufficient that there was this requirement of state law which was met by petitioner to the satisfaction of the state regulatory body.

The cases relied upon by respondent may be distinguished. In *Independent Life & Accident Insurance Co.. supra.* and *United Life Insurance Co.. supra.* the state law required only that 3 percent of premiums be set aside in a reserve. which resulted in a fund much smaller than a reserve needed to liquidate the policies according to established tables. We pointed. out that it was not enough to show a compliance with state law if that law did not require a true life insurance reserve within the meaning of the Federal revenue acts. and that the excess of an actuarially computed reserve over that specified in the state statute was merely a voluntary reserve which was not required by state law and could have been used for other purposes. In the instant case it is made to appear that the reserve which petitioner maintained and was required to maintain was substantially the equivalent of one actuarially computed. In *Swift & Co. Employees Benefit Association. supra.* the reserve was computed actuarially. but the association was not subject to the state insurance laws or required to maintain any reserve. In *General Life Insurance Co., supra.* the Insurance Department of the State of Texas required that at least 60 percent of gross income. other than membership fees and the first three monthly premiums or assessments, be placed in a mortuary fund. The company was denied classification as a life insurance company, the

opinion stating that "There is no indication whatever that the mortuary fund was computed by use of mortality tables or an assumed interest rate or on any actuarial principle"; and that there was no proof that the reserve established was the equivalent of an actuarially computed reserve is disclosed by the statement that "even if petitioner had calculated its mortuary fund contributions on the basis of accepted life insurance principles the excess, not being required by law, would constitute a voluntary reserve fund and be ineffectual to qualify petitioner under the definition."

Since, in the instant case, petitioner was required by law to maintain a reserve equivalent to a reserve computed upon the American Experience Table of Mortality, with an assumed rate of interest, and since of its total reserves more than 50 percent were held for the fulfillment of its life insurance policies, we hold that petitioner is a life insurance company within the meaning of section 201 (a) of the Revenue Acts of 1936 and 1938. In the light of this conclusion it is unnecessary to consider petitioner's alternative contentions.

*Decision will be entered under Rule 50.*