The American Hospital & Life Insurance Company v. Commissioner.
American Hosp. & Life Ins. Co. v. Commissioner
Docket No. 168.
United States Tax Court
1943 Tax Ct. Memo LEXIS 24; 2 T.C.M. (CCH) 1102; T.C.M. (RIA) 43515; December 17, 1943
*24 R. N. Gresham, Esq., 1603 Alamo Nat. Bldg., San Antonio, Tex., for the petitioner. Donald P. Meyers, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: The petitioner seeks a redetermination of income tax deficiencies in the amount of $11,373.10 for the calendar year 1938 and $14,708.04 for the year 1939. The sole issue is whether or not the petitioner is taxable as a life insurance company within the purview of sections 201,202 and 203 of the Revenue Act of 1938. The petitioner filed its income tax returns for the years involved on Form 1120-L with the collector of internal revenue for the first district of Texas, at Austin, Texas. Findings of Fact The petitioner is a Texas insurance corporation having its principal office in San Antonio, Texas. It was chartered April 25, 1935 to transact"health insurance, accident insurance, life insurance, and a combination of two or more of said kinds of insurance, each class of such business to be transacted in separate and distinct departments, and such classes of insurance to be written only on the monthly or weekly premiums plan." No policy was to be issued promising to pay more than $1,000 in theevent *25 of death from natural causes and not more than $2,000 in the event of death from accidental causes. Its charter was amended April 25, 1938 eliminating the limitation on the amount of any one policy. In 1938 it issued only the combined policy of health and accident and return-of-premium benefits. In 1939 it issued two kinds of policies, i.e., a combined hospitalization (health), accident and return-of-premium-benefits, and one covering only hospital and health or accident. The forms of thepolicies were approved by the Board of Insurance Commissioners of the State of Texas, Life Division. In 1939 it had only 140 policies that were not combined with return-of-premium-benefits. As of December 31, 1939, the petitioner had outstanding 37,798 combined hospitalization, accident and return-of-premium-benefits policies. Of this number 1,143 were outstanding in the State of Missouri. The combined policy of hospitalization (health), accident and return-of-premium-benefits (Form G R-51) Consisted of three parts designated as follows: PART I
HOSPITAL SERVICE BENEFITS
PART II
ACCIDENTAL DEATH, DISMEM-
BERMENT AND LOSS OF SIGHT
INSURANCE
PART III
ALL PREMIUMS RETURNED IN
EVENT OF DEATH
*26 Among the provisions contained in PART III were the following: In the event of the death of Contract Holder from any cause while insured hereunder, the Company will immediately, upon receipt of due proof of death and of the interest of the Claimant, pay to the designated Beneficiary an amount equal to the sum of all the premium payments, without interest, which have been made on this Contract. This payment will be made regardless of and in addition to any and all Hospital or Accidental Death. Dismemberment or Loss of Sight Benefits which may have been paid under this Contract. The reserve for which funds are held for the Return of Premium Benefits provided for in the face of this Contract shall be maintained at not less than 3 1/2%, according to the American Experience Table of Mortality, and Return Premium Benefits so provided shall be on a yearly renewable term basis. If this Contract shall be in effect continuously for a period of ten (10) years, the premiums may be adjusted for the purpose of providing for the increased return of premium benefits and a similar adjustment may be made at the expiration of each interval of ten (10) years thereafter. The petitioner began issuing *27 this policy contract in 1937. The matter of necessary reserves for the return-of-premium-benefits feature of the contract was taken up with the State Insurance Commission. Due to the small risks involved as compared with the tremendous number of policies, an exact calculation was impossible. A general approximation method was very much to be desired. The petitioner furnished to the actuary for the State Insurance Commission the ages of its outstanding health and accident policyholders from which data an average age was determined. Using the average age so determined, together with the total amount of health and accident insurance outstanding, or the equivalent of the return-of-premium-benefits applicable thereto, a reserve for an individual of that determined average age with that amount of insurance outstanding was ascertained through the application of the mortality tables. This computation determined a reserve of between eight and ten dollars per thousand of exposure at that age. As a matter of convenience, ease of calculation, and to take care of the increase of age year by year as the contracts grew older, an arbitrary figure of ten dollars per thousand (or 1%) was approved *28 by the State Insurance Commission as an adequate reserve for the liability under this particular benefit of petitioner's policies. The adequacy of the petitioner's "life" reserves was not again tested by the actuary for the State Insurance Commission for the period 1937 until after the company filed its annual statements for the period ending December 31, 1940. The Texas Revised Civil Statutes, Art. 4688, section 2, provides the basis for but not the method of determining the reserve liability of the death benefit policies in accordance with the American Experience Table of Mortality. During the years 1938 and 1939, the petitioner's predominant business was in health and accident contracts. Using the formula of $10 per $1,000 as a reserve basis for its life feature, and 50% of the last current month's premium as a reserve for its health and accident policies (plus advance or unearned premiums paid on health and accident insurance), the amounts of petitioner's income, disbursements and reserves attributable to its health and accident, as compared to life insurance, for each of the years 1938 and 1939 were as follows: Insurance
Premiums
Claims
in Force
Reserve
Collected
Paid
End of Year
Maintained
1938
Health and Accident
$273,584.53
$125,757.00
$ 13,603.89
$5,352.24
Life
3.220.75
872.65
374,629.90
3,746.30
1939
Health and Accident
$380,137.33
$195,720.38
$ 20,957.60
$8,033.70
Life
4,811.87
2,439.70
567,247.25
5,672.47
*29 Applicants are not required to take a physical examination to secure petitioner's return-of-premium-benefits insurance, the same premium is charged for all ages and the portion of the total premuim for the combined coverage that is charged for the return-of-premium-benefits protection is ten cents for each dollar charged. The amount of death benefits insurance payable upon the death of the insured under the return-of-premium-benefits portion is a sum equal to the total of all premiums paid on the policy during its life to death of the insured for all protection, i.e., hospitalization (health), accident and return-of-premium-benefits, without interest. It is an increasing amount, increasing each month by the amount of the total premiums paid. The petitioner was for the years 1938 and 1939, and now is, under the supervision of the Life Insurance Commissioner of Texas. At the time the petitioner offered the return-of-premium-benefits portion of its policies to the Life Insurance Commissioner of Texas for approval as required by Art. 4749 and Art. 4750, Tex. R.C.S., the Commissioner took the position that the return-of-premium-benefits portion of the policy was life insurance under *30 the laws of Texas and required that that portion of the policy comply with Art. 4732, Tex. R.C.S., as to what a life insurance policy must contain, and Art. 4733 as to its limitations in so far as applicable to term insurance, and the same was so conformed thereto and was approved as a life insurance policy. Subsequently the Attorney General of Texas ruled in an opinion to the Life Insurance Commissioner of Texas that the return-of-premium-benefits portion of petitioner's policy was life insurance and that its combined policy of hospitalization, accident and return-of-premium-benefits was a combined policy of life, accident and health insurance under the laws of Texas. Life and miscellaneous statements are required to be filed annually by all life, health and accident companies doing business in the State with the Life Insurance Commissioner of Texas by Art. 4721, Tex. R.C.S., and petitioner's life and miscellaneous statements for the year 1938 and 1939 were so filed pursuant thereto. These statements filed by the petitioner were examined and approved by the Life Insurance Commissioner of Texas. The Life Insurance Commissioner of Texas issued to petitioner a certificate of authority *31 for the years 1938, 1939 and 1940, prescribed by Art. 4686 of the Texas Revised Civil Statutes, and also the certificate of deposit and the certificate of valuation for the years 1939 and 1940, as prescribed by articles 4739 and 4740, Texas Revised Civil Statutes. In March 1940 the petitioner was issued a regular life certificate of authority by the Superintendent of Insurance Department of the State of Missouri. This was predicated on its 1939 annual statement (conventional form). The State of Missouri accepted the valuation made by the Life Insurance Commission of the State of Texas of the reserves on the return-of-premium-benefits insurance portion of the petitioner's outstanding policies on December 31, 1939, as meeting the minmum standard of reserves of that State. The petitioner does not issue group policies. It writes insurance for units or groups of employees of a given employer, but issues to each insured an individual policy. The return-of-premium-benefits policy is a tenyear renewable term life insurance with an increasing amount payable. The premiums are payable monthly in advance. The policies have no cash surrender value. The total income of the petitioner from interest, *32 dividends and real estate for the year 1938 was $7,320.14 and for 1939 was $6,448.93. The petitioner, during the years 1938 and 1939, was a life insurance company, duly chartered under the Insurance Laws of the State of Texas. The petitioner's life reserve, as computed, complied with the provisions of the Insurance Laws of the State of Texas in effect in the years 1938 and 1939. The reserve funds held for the fulfillment of its return-of-premium-benefits contracts comprised more than 50 per cent of its total reserve funds. Opinion The contested deficiencies in income taxes result from a denial by the respondent of the petitioner's right to be taxed in accordance with the provisions of sections 201, 202 and 203 of the Revenue Act of 1938. [1]
*33 The respondent does not deny that the petitioner did, in the tax years, issue life insurance contracts or that the reserve funds held for the fulfillment of life insurance contracts comprised more than 50 per centum of its total reserve funds. The sole issue for determination is whether petitioner is such a life insurance company under section 201(a) as entitles it to report its income for income tax purpose under the quoted sections of the Revenue Act. The solution of this problem is to be found in the application of the reserve test provided by the Revenue Act and the Treasury Regulations [2] promulgated under that act. Did the petitioner during the taxable years compute and maintain its reserves in the manner required by law? The respondent argues that while the combined health, accident and return-of-premium-benefits policy which the petitioner issues seemingly qualifies it as a life insurance company, within the definition as contained in section 201(a) of the Revenue Act of 1938, a strict analysis of the basis and method of computing its life reserve demonstrates that the petitioner's designated reserve funds are not "dependent upon interest earnings for their maintenance". *34 Respondent says the petitioner's combined policy and the manner in which its instant reserves were ascertained are both unique. This is undoubtedly true. When the petitioner commenced to issue its combined policy in 1937, it had no insurance of this type outstanding. It asked the State Insurance Commission for permission to issue such a combined policy and for a determination of the proper reserve for the return-of-premium-benefits insurance feature of said policy. The actuary for the State Insurance Commission, based upon the health and accident policies of the petitioner then outstanding, applied a formula under the provisions of the Texas Civil Statutes governing life insurance companies authorized to transact life insurance in that State. The result of this calculation was a figure between $8 and $10 per thousand of exposure. For convenience and ease of computation, an arbitrary figure of $10 per thousand was adopted by the petitioner and authorized by the State Insurance Commission as being adequate and sufficient for the fulfillment of the death benefit feature of these combined policies. It is quite apparent that at the time this reserve figure was ascertained a "true life insurance *35 reserve" was not capable of precise mathematical calculation. It is clear, however, that the petitioner was required to maintain reserves on the basis of the American Experience Table of Mortality with an interest assumption of 3 1/2 per cent with respect to the legal reserve insurance policies issued by it by the laws of the States of Texas and Missouri in which it was authorized to do business. [3]
*36 The actuary for the State Insurance Commission of Texas in 1937 first determined the reserve required by the Texas insurance laws. He unequivocally testified that the reserves were computed in accordance with the governing statutes of Texas on the basis of the American Experience Table of Mortality with interest at 3 1/2 per cent. After December 31, 1940, he tested the reserves against the annual statements filed by the petitioner as required by law and found them adequate. His testimony was corroborated by the present actuary for the State Insurance Commission. The respondent offered no evidence to the contrary. What constitutes an insurance reserve has often been stated. Its purpose is to put the company in funds to meet the payment or reinsurance of specific contingent liabilities. Maryland Casualty Co. v. United States, 251 U.S. 342, 350. We have had occasion in a recent decision to restate the principles applicable to life insurance reserves. In Reliance Benefit Association, 2 T.C. 15, at page 19, it is said: * * * The commonly accepted method, perhaps the only reasonably accurate one, of determining how much *37 of each current premium should be set aside to mature the policies is by recourse to recognized tables of mortality experience. Once this has been done by the proper state officials and the approximate requisite amount has been ascertained, we see no objection to expressing an equivalent reserve in other terms, as, with respect to two of the policies in this case, upon a flat percentage of premiums. Certainly the nature and purpose of the reserves are the same in either event. So long as a company is required by law to maintain a reserve. and the required reserve will be sufficient, upon comparison with reserves based upon experience tables, to enable the company to liquidate its policies, the purpose of the reserve requirement of the statutory definition has been met. Such a reserve, we think, is held for the fulfillment of life insurance contracts within the meaning of the revenue acts. We think what was there said is applicable to and decisive of the instant proceeding. Cf. General Life Insurance Co. v. Commissioner, 137 Fed. (2d) 185; Royal Highlanders v. Commissioner, 138 Fed. (2d) 240; Independent Life & Accident Insurance Co. v. Commissioner, 138 Fed. (2d) 408. *38 We hold that the petitioner has sustained the burden of showing that its life reserves were computed and maintained in the manner required by law and was entitled to report its income for the years 1938 and 1939 under sections 201, 202 and 203 of the Revenue Act of 1938 and the Internal Revenue Code of 1939. Decision will be entered for the petitioner. Footnotes
1. SEC. 201. TAX ON LIFE INSURANCE COMPANIES. (a) Definition. - When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds. SEC. 202. GROSS INCOME OF LIFE INSURANCE COMPANIES. (a) In the case of a life insurance company the term "gross income" means the gross amount of income received during the taxable year from interest, dividends, and rents. * * * SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES. (a) General Rule. - In the case of a life insurance company the term "net income" means the gross income less - * * * * *
(2) Reserve Funds. - An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3 3/4 per centum shall be substituted for 4 per centum. Life Insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3 3/4 per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only; * * * * *↩
2. Regs. 101. Art. 203(a)(2)-1. Reserve funds. - In general, the reserve contemplated is a sum of money, variously computed or estimated which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. It must be required either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory, or the District of Columbia when promulgated in the exercise of a power conferred by statute, but such requirement, without more, is not conclusive; for example, it does not include reserves required to be maintained to provide for the ordinary running expenses of a business definite in amount, and which must be currently paid by every company from its income if its business is to continue, such as taxes, salaries, reinsurance and unpaid brokerage; the reserve or net value of risks reinsured in other solvent companies to the extent of the reinsurance; reserve for premiums paid in advance; annual and deferred dividends; accrued but unsettled policy claims; losses incurred but unreported; liability on supplementary contracts not involving life contingencies; estimated value of future premiums which have been waived on policies after proof of total and permanent disability. In any case where reserves are claimed, sufficient information must be filed with the return to enable the Commissioner to determine the validity of the claim. Reference should be made to the item in which the reserve appears in the annual statement and to the statute or insurance department ruling requiring that such reserves be held. Only reserves which are so required, which are peculiar to insurance companies, and which are dependent upon interest earnings for their maintenance will be considered. A company is permitted to make use of the highest aggregate reserve called for by any State or Territory or the District of Columbia in which it transacts business, but the reserve must have been actually held. In the case of life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, it is required that reserve funds thereon be based upon recognized tables of experience covering disability benefits of the kind contained in policies issued by this particular class of companies. The deduction in respect of such reserve funds (not required by law) is 3 3/4% percent of the mean of such reserve funds held at the beginning and end of the taxable year. ↩
3. Texas Civil Statutes of 1925 as amended, Article 4688. Missouri Laws, Chap. 37, Art. 2, Sec. 5831.↩