NATIONAL RESERVE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112638. Promulgated March 14, 1946.

*Z. Simpson Cox, Esq.,* for the petitioner.
*Earl C. Crouter, Esq.,* for the respondent.

474

## OPINION.

ARNOLD, *Judge*: The question of whether a corporation operating under the Arizona Benefit Corporation Laws of 1937 is entitled to classification as a life insurance company for Federal income tax purposes was considered by this Court in *Reliance Benefit Association*, 2 T. C. 15; petition to review dismissed June 13, 1944, 143 Fed. (2d) 597. We there construed sections 201 (a) of the Revenue Acts of 1936 and 1938, the provisions of which are identical with the provisions of section 201 (a), Internal Revenue Code, set forth in the margin,[1] and held the taxpayer was a life insurance company as defined by the Federal revenue statutes.

Petitioner relies upon our decision in the cited case, and contends that the evidence adduced establishes its right to be similarly treated. It is conceded that there is a deficiency if the reserves maintained by petitioner are not the reserves "required by law" and if petitioner

---

[1] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this chapter the term life insurance company means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

falls under section 207 of the code, which relates to mutual insurance companies other than life.

The taxing statute defines a life insurance company as an insurance company engaged in issuing life insurance, the reserve funds of which held for the fulfillment of such contracts comprise more than 50 percent of its total reserve funds. The facts show that petitioner was engaged during the taxable years in issuing life insurance policies. Its "total reserve funds" within the meaning of section 201 (a), *supra*, must, therefore, relate to reserves set up in connection with its life insurance business.

To be entitled to classification as a life insurance company under section 201 (a) the evidence must show that petitioner's reserves held for the fulfillment of its life insurance contracts comprised more than 50 percent of its total reserve funds. The facts show that the Arizona law and the commission charged with the enforcement of the law, whose rules and regulations, under which petitioner operated, had the force and effect of law [2] and required petitioner to place 50 percent of its premium receipts, after the first year, in a reserve fund which, with interest accretions at $3\frac{1}{2}$ percent, was deemed sufficient under recognized mortality tables to protect policyholders.

All policy forms issued by petitioner during the taxable years were examined by the state commission and were approved as meeting state legal requirements for the protection of policyholders. Our findings show that petitioner allocated daily to its mortality reserve fund $66\frac{2}{3}$ percent of its premium receipts, after the first year, as required by the provisions of its life insurance policies. The facts show that each year since 1937 petitioner has been examined by the Arizona Corporation Commission and found to meet state requirements relative to the maintenance of reserves. It is clear that without compliance with state requirements petitioner would have been forced to cease doing business. *Pioneer Mutual Benefit Association* v. *Corporation Commission*, 123 Pac. (2d) 828.

In the transaction of its life insurance business petitioner maintained only two funds, namely, its mortality fund and its expense fund. The mortality fund was the reserve fund held by petitioner for the fulfillment of its life insurance contracts. The expense fund was used to meet the general operating expenses of the business and certainly was not a reserve within the meaning of that term as defined by the Supreme Court in *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 350, which definition is the basis for the definition appearing in the Treasury's regulations.

Respondent introduced as an exhibit petitioner's general ledger account for the taxable years for the purpose of showing that certain

---

[2] *Reliance Benefit Association, supra,* pp. 16, 17.

items charged against the mortality fund were not strictly benefit claims. The largest of such items charged to this account during the taxable years were refunds to policyholders or dividends. Such disbursements were in no proper sense a part of petitioner's operating costs or expenses. They recorded the pro rata refund to petitioner's policyholders of excess premiums. Petitioner was a nonstock, non-profit, mutual corporation and the savings or excess premiums in its mortality fund belonged to its policyholders. Its mortality reserve was not impaired by the pro rata distributions to policyholders. At all times material hereto this reserve was in excess of legal requirements. The incidental expenses charged to the mortality reserve were properly charged thereto under state law and petitioner's bylaw XVI. The ledger entries with respect to incidental expenses specifically referred to the policyholder whose claim was being settled and the expense items charged to the fund were incidental to settlement of the claims payable under the policies. The aggregate amount in each year was not excessive and did not impair the reserve fund required by law to protect its policyholders. The minor items were frankly admitted by petitioner to be an improper charge against the mortality fund. It is urged, however, that these items were nominal in amount, did not affect the sufficiency of petitioner's reserve, and show that the ledger account was not kept in accordance with good bookkeeping practices.

Respondent argues strenuously that because of these charges the reserve funds held by petitioner were not true reserves as defined by section 201 (a), since the reserve fund was subject to and was actually used to meet general operating expenses as well as policy claims. Respondent cites and relies upon *First National Benefit Society* v. *Stuart* (C. C. A., 9th Cir., 1943), 134 Fed. (2d) 438; certiorari denied, 320 U. S. 211; *First National Benefit Society* v. *Stuart* (D. C. 1944), unreported case, decided June 15, 1944, and section 19.203 (a) (2)–1 of Treasury Regulations 103.[3] We do not understand that respondent

---

[3] SEC. 19.203 (a) (2)–1. *Reserve funds.*—In general, the reserve contemplated is a sum of money, variously computed or estimated, which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. It must be required either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory or the District of Columbia when promulgated in the exercise of a power conferred by statute, but such requirement, without more, is not conclusive; for example, it does not include reserves required to be maintained to provide for the ordinary running expenses of a business definite in amount, and which must be currently paid by every company from its income if its business is to continue, such as taxes, salaries, reinsurance and unpaid brokerage; the reserve or net value of risks reinsured in other solvent companies to the extent of the reinsurance; reserve for premiums paid in advance; annual and deferred dividends; accrued but unsettled policy claims; losses incurred but unreported; liability on supplementary contracts not involving life contingencies; estimated value of future premiums which have been waived on policies after proof of total and permanent disability.

denies the sufficiency in amount of petitioner's mortality reserve; his point is that, regardless of the amount set aside in the fund, it was not a reserve, since it could be and was invaded for ordinary operating expenses, and if a part of the fund is subject to such use. the entire fund could be so used, which prevents the fund from being a "reserve fund" within the meaning of section 201 (a), *supra*.

In considering respondent's argument it must be remembered that general operating expenses were payable out of the expense fund provided for by section 2, article xvi, of petitioner's bylaws. His argument poses the question of whether the payment of minor items, which in no way impaired the reserve funds required for the protection of policyholders, and which were erroneously charged thereto, makes that reserve fund other than a reserve for benefit claims. We think not. To so hold would give book entries a probative weight to which such entries are not entitled, *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179. Petitioner's assets available to satisfy policy claims and the mortality reserve exceeded mortality reserve requirements. Bookkeeping errors or the use of this excess for business purposes should not defeat petitioner's classification as a life insurance company where it otherwise meets the requirements of section 201.

Respondent argues that we should construe the term "reserve funds" in section 201 (a) the same as the Treasury regulations construe that term in section 203 (a) (2) of the code. In *Reliance Benefit Association, supra*, we assumed that the term "reserve funds" was to be given the same meaning in both sections. On that point, among other things, we said: "The validity of such regulations (referring to the regulations on this point) has been recognized by this and other courts, *Swift & Co. Employees Benefit Association*, 47 B. T. A. 1011, and cases cited therein   *   *   *."

But, while agreeing with the Commissioner in the *Reliance Benefit Association* case, *supra*, that the term "reserve funds" meant the same in both sections of the statute, we did not agree with him that the reserves there involved did not meet the test of the statute. We held that "reserve funds" in that case, which were arrived at in all essential respects in the same way as in the instant case, qualified as true life insurance reserves within the purview of section 201 (a), and that the taxpayer there was taxable as a life insurance company. We so hold here.

The *First National Benefit Society* cases cited by respondent, *supra*, are factually distinguishable. The Circuit Court decision dealt with the Arizona laws prior to the 1937 revision and amendments. The court there agreed with the lower court's finding that the First National Benefit Society did not voluntarily keep, and no statute, rules, or regu-

lations of the state or governing body required the Society to keep, a reserve fund for the fulfillment of its life insurance contracts. Here, the Arizona law as interpreted by the Supreme Court of Arizona in *Pioneer Mutual Benefit Association, supra,* not only required the creation of the reserve fund, but delegated to the Arizona Corporation Commission the power and duty to require that the reserve so established shall be sufficient to pay benefit claims under the policies. *Reliance Benefit Association, supra,* pp. 16 and 17. The District Court decision in the *First National Benefit Society* case, *supra,* decided June 15, 1944, dealt with 1938 taxes and affirmed articles 201 (a)–1 and 203 (a)–1 of Treasury Regulations 101 in their interpretation of section 201 (a) of the Revenue Act of 1938. The District Court read into the term "reserve funds" in section 201 (a) the same meaning given the term in section 203 (art. 203 (a)–1, Regulations 101) by concluding as a matter of law that the National Benefit Society did not have or maintain a "reserve fund" for the *sole* purpose of fulfilling its insurance contracts. Since the filing of briefs herein, the Circuit Court of Appeals for the Ninth Circuit has affirmed the District Court in *First National Benefit Society* v. *Stuart,* 152 Fed. (2d) 298, not upon the above ground, but upon the ground that petitioner had failed to sustain its burden of proof, i. e., that it was a life insurance company within the meaning of section 201. We can find no such failure of proof in the instant case, which also differs in other material respects from the District Court case.

As hereinbefore indicated, we are of the opinion that this petitioner was required to and did maintain reserves for the fulfillment of its life insurance contracts. These reserves were in excess of 50 percent of petitioner's total reserve funds. Except for certain minor charges against the mortality reserve, which did not change the character of that reserve, our facts are comparable to the facts in *Reliance Benefit Association, supra.* Since the petitioner wrote only life insurance contracts and its reserves held to fulfill such contract obligations were in excess of 50 percent of its total reserve funds, we hold that petitioner is a life insurance company within the meaning of section 201 of the code, and that there is no deficiency for either of the taxable years.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

DISNEY, *J.,* dissenting: The reserve in question in this case must be one "held for the fulfillment of" life insurance and annuity contracts. As I read the record in this matter, the reserve can not be said

to be so here. The prime object of life insurance, I take it, is the safety of the policyholders. Therefore, reserves "for the fulfillment of such contracts" are required by section 201 (a). In my view, considering the object of life insurance to be as above seen, the reserve must be one *exclusively* held for the fulfillment of the life insurance contracts. I think the word "exclusively," although not expressed in the text of the act, is, because of the nature of the legislation, a reasonable interpretation. The mortuary fund here, however, was held not solely for the fulfillment of the insurance policies, but for the paying of premium refunds, attorney's fees, for the setting up of a legal reserve life insurance company, and for other expenses. Moreover, on the matter of premium refunds, it appears that any excessive premiums were returnable from the mortuary fund— although only 25 percent or 50 percent of the premiums of the first year of a policy, and 66⅔ percent of the premiums in later years, went into the reserve, thus subjecting the reserve to a drain of a greater amount than ever went into it. As to attorney's fees, not only was there no limit to the cost of litigation which might be taken from the fund under this item, but the expenses of attorney's fees to contest insurance policies appears to me to be the antithesis of the "fulfillment of such contracts"—for which reserve funds must be held. I am altogether unable to comprehend how a mortuary fund which is subject to be drawn upon to set up a legal reserve life insurance company can be said to be held for the fulfillment of the insurance contracts.

In my opinion, therefore, the mortuary fund here involved was held also for the payment of premium refunds, attorney's fees, and formation of a legal reserve life insurance company, and therefore not "for the fulfillment" of life insurance and annuity contracts. I would not say that mere mistaken charges against the mortuary fund, due to error, would violate the statute, but any withdrawals except by such error, indicate that the fund was *held* for the purpose of such withdrawals, and not merely for the fulfillment of life insurance policies.

The present question was not discussed or decided in *Reliance Benefit Association*, 2 T. C. 15, so that, if it in fact lurked in the record in that case, the opinion is not authority here. It involved only the manner of computing a reserve, and not whether it could be drawn upon for various and sundry matters aside from fulfillment of the contracts and still be within section 201 (a). I therefore dissent.

HILL, *J.*, agrees with the dissent.